CHARLES J. HARRIS v. FREDERICK B. PIATT.

*Contract—Right to rescind for change in subject-matter—Fraud—Equity.*

1. The right to rescind a contract exists when there has been a material change in the subject-matter, before the *final* consummation of the agreement, brought about by the act of *one* of the parties, which the party rescinding did not authorize or assent to.

2. P., the owner of stock in a manufacturing corporation, entered into an agreement with H. to exchange a portion of such stock for real estate and other property owned by H. The deed of the real estate was executed, and placed in the hands of a third party, to be delivered when the stock was transferred upon the books of the corporation in accordance with its by-laws, after which a meeting of the stockholders was held, and the stockholders voted to sell and convey all the assets of the corporation for 60 cents on the dollar of the inventoried value thereof, in which action P. participated, and voted to sell, which left the corporation insolvent and the stock worthless; and then P. obtained the transfer of said stock to H. upon the books of the corporation, and so obtained the deed, without the knowledge or consent of H.

   *Held*, that there was such a *material* change in the *subject-matter* of the contract, brought about by the active participation of P., as authorized H. to rescind the contract, and that the conduct of P., in voting to dispose of the assets at 60 cents on the dollar, by which it was rendered worthless, and then procuring the transfer of stock and obtaining the deed, was inequitable, and that H. was entitled to be relieved from the agreement.[1]

Appeal from Ingham. (Gridley, J.) Argued October 28, 1886. Decided January 6, 1887.

Bill to cancel contract for fraud. Defendant appeals. Affirmed. The facts are stated in the opinion.

*Cahill & Ostrander*, for complainant.

*S. L. Kilbourne*, for defendant.

[No authorities cited.—REPORTER.]

---

[1] Head-notes prepared by CHAMPLIN, J.

CHAMPLIN, J.   Complainant seeks the rescission of a certain agreement, entered into between himself and defendant,. and the reconveyance of certain real estate, and retransfer of certain personal property, to him, on account of the alleged fraudulent representations and conduct of defendant.

The bill of complaint was filed on the twenty-second day of September, 1885.   It states that on the eighteenth day of September, 1885, complainant was the owner of an undivided half interest in lot 12 of Barnard's subdivision of lot 1, block 242, in the city of Lansing, with the appurtenances, which consisted of a mill building, used and operated as a custom feed mill, with machinery and fixtures complete; that he operated this mill in partnership with one Joseph Ingersoll; that the property was incumbered by a mortgage for $550, and was worth over the incumbrance $625; that he owned personally property described particularly in the bill;. that the defendant, Frederick B. Piatt,. was on that day, and prior thereto had been, the owner and possessor of 80 shares. of the capital stock of the Capital City Manufacturing Company, a corporation organized and doing business under the laws of the State of Michigan, the par value of which shares. was $25 each, and upon which said Piatt had paid into the corporation $1,000; that Piatt had been employed as foreman in the shops of the corporation at a salary of $800 a. year; that the corporation had been for more than a year engaged in manufacturing in said city, employing a large number of men, and engaged apparently in a safe, prosperous,. and continuing business; that it owned certain buildings and machinery, stock, lumber, and manufactured articles, and leased other buildings, lands, and machinery.

That defendant, on said eighteenth day of September, and on many days prior to that day, falsely and fraudulently represented to complainant that the Capital City Manufacturing Company was then and had been doing a successful and prosperous business; that said shares of stock had earned

him in one year a dividend of about $180; that said corporation was hard up for money to enable it to push its business, but that this want would be met by an assessment of stockholders, or by an increase of capital stock; that said company was all right, and its stock worth par; that it owned the plant and realty, and machinery operated by it, and all of said plant; that it would continue in business; that complainant could have the position said Piatt held as foreman for the corporation, which position complainant was competent to fill, and, to assure complainant of this fact, took him to said corporation's mill, and made, on said eighteenth of September, agreements with the brother of said Piatt, who was the superintendent for the corporation, and whose province it was, among other things, to employ men for the company, to give to complainant the position of foreman in the employ of said company, at wages of two dollars a day for a short period, and two dollars and a half for the full time of one year.

That, relying on these representations, complainant was induced to and did agree with defendant to transfer to him, in exchange for 80 shares of the stock of said corporation, the real estate hereinbefore mentioned, and personal property enough to be of the full value of $1,000; that he was told by the defendant that it would, under the by-laws of the company, require a period of two weeks before said stock could be transferred on the books of the company.

Complainant then states his agreement with the defendant, particularly, as follows: .

"Your orator further shows to the court that his understanding and agreement with said defendant was as follows: He (your orator) agreed to deed to said Piatt his undivided one-half interest in said real estate hereinbefore described, subject to the mortgage aforesaid, for the sum of six hundred and twenty-five dollars; to transfer to said Piatt his (your orator's) interest in the stock and material on hand in your orator's said mill for fifty-two and 50-100 dollars; his interest.

in unearned insurance premium, agreed to be in value sixteen dollars; his interest in wagon, for ten dollars; in a new extra mill-stone, for twelve and 50-100 dollars; a note, to be made by the said Joseph Ingersoll, for the sum of two hundred and fifty-nine dollars; and enough of the book accounts and bills receivable of said Harris & Ingersoll to make the full and true sum of one thousand dollars.

"And your orator says that the said Piatt, defendant, by said agreement was to transfer to your orator, and procure to be transferred on the books of said corporation, eighty shares of the capital stock of said corporation, upon account of which the said Piatt had paid one thousand dollars, and to give up to your orator his (defendant's) place as foreman in said company's employ, which employment of your orator had been agreed to by the said superintendent of said company, the brother of defendant; that no certificates of stock were ever issued by said corporation; that it was further understood and agreed by and between your orator and said Piatt that, in consideration of the time it would take to transfer said stock, the deed of the real estate of your orator should be executed by your orator and his wife, and deposited with some third person, to be delivered to said defendant only upon the production by said Piatt of a certificate from the secretary of said company, showing a transfer of said stock to your orator upon the books of said company; and it was expressly understood and agreed that if, during the said interim, anything should occur to said company affecting injuriously its standing or the value of its stock, your orator might, at his option, refuse to proceed further with said transfer and bargain, and the agreement was not in that case to be carried out or completed."

Further, complainant says that arrangements had been fully made by which complainant was, on September 21, to begin work as foreman for the company; that in pursuance with such agreement, on the eighteenth of September, himself and wife joined in executing and acknowledging a warranty deed of the real estate hereinbefore described to defendant, which was deposited with Mr. J. B. Humphrey, and with it was deposited Mr. Humphrey's written memorandum, which provided in substance for the delivery of the deed to defendant upon the transfer of said stock, or payment of

money received therefor, should any of the directors of said company, or stockholders, desire to purchase the same, under the by-laws of said company; that, upon depositing the deed, he allowed defendant to go into possession of the personal property so far as he could do so; that on the same day, September 18, complainant left Lansing, and did not return until Sunday evening, the twentieth of September; that he went to the works of the company on the twenty-first of September to enter upon his duty as foreman, and was then informed by stockholders of the company that the stock of the corporation was not all right, as represented by defendant, and was not, and had not been for a long time, worth par; that it did not and never had owned its plant at Lansing, but leased the larger and more valuable property used and occupied by it.

Complainant charges, on information obtained from the same and other sources, that, at a meeting of the stockholders of the corporation, held on the evening of the eighteenth of September, and after complainant had executed and deposited said deed, a resolution was adopted, which provided for the transfer of the entire property interest of said corporation, excepting bills receivable, to certain individuals, at a price which was 60 per cent. of the invoice value thereof, and provided for the discontinuance of business operations by said corporation; that on the nineteenth of September said bargain was completed, and property, materials, and fixtures of said corporation transferred by it, which sale and transfer was completed at about 1:30 P. M.

That such sale and transfer had been talked about by the members for two weeks before it was accomplished, and defendant had all the time been informed thereof, and was present at the meeting of said corporation held on the evening of September 18, and knew of the action of such meeting, and took part therein, and well knew of said transfer and sale by said corporation of its property and material, as

made; that the debts of the corporation largely exceeded in amount the value of its bills receivable, and that it had retired from business, and would and had ceased to manufacture as before; that said corporation was in fact dead, and its stock of little, if of any, value.

That the defendant, well knowing all these facts, at a meeting of the board of directors held on the afternoon of September 21, procured the assent of said directors to have immediate transfer of the said 80 shares of stock on the books of the company, procured from the secretary of the corporation a certificate of such transfer, and took such certificate to the said J. B. Humphrey, in whose custody said deed was, and received from him the said deed, and sent the same to the register of deeds of Ingham county, who received and entered the same for record; that on the twenty-second of September complainant executed and offered to deliver to defendant an assignment in writing of said 80 shares of stock, and demanded from him a deed of the realty and possession of the personalty, which he refused.

The defendant answered fully, and denied fully the false and fraudulent representations stated and charged in the bill of complaint.

To the charges contained in the bill, as to what occurred at the stockholders' meeting after the deed was deposited, he answers, and says:

"Further, the defendant says that at a meeting of the stockholders, held on the evening of September 18th inst., defendant gave notice, in accordance with the by-laws, of his desire to sell and have transferred to complainant eighty shares of his stock, and asked the stockholders to waive their option and transfer the stock, which was not done, for the reason that there were some who doubted the authority to make such waiver, and held the matter under advisement until the morning of the nineteenth, when said stockholders' meeting was to reconvene, and at which time the stockholders' rights were waived, and a resolution was passed waiving the option, and directing the secretary to make the

transfer; whereupon the said Humphrey, being officially notified and satisfied that the conditions on which the deed was to be delivered had been fully complied with, delivered to defendant complainant's deed for said mill property, which deed is duly recorded in the office of the register of deeds for Ingham county, Michigan; and defendant is now, and has been since September 16, in full possession of said mill and personal property, save as he is now restrained by the injunction of this court.

"The defendant, further answering, says that it is true that at a meeting of the stockholders of said corporation, held on the evening of September 18, a proposition was made by part of the stockholders to purchase the assets of said corporation, and that such proposition was accepted by the stockholders on the nineteenth, said sale being at the price of sixty cents on the dollar of the appraised value of said corporation's assets; and that, at said meeting, this defendant was present, and voted his forty shares of the capital stock, but that said Harris was not present, nor were his eighty shares of stock voted at said meeting.

" Defendant, further answering, says that, at the time of the trade with said complainant, he had no knowledge of the intention of any stockholder to sell the assets of said corporation, and that the first he heard of it was at the meeting on the evening of September 18, and after the trade with complainant had been completed, and his deed to defendant deposited with said Humphrey, and defendant's order for the transfer of the stock to said complainant had likewise been deposited with said Humphrey, by which said complainant would get the eighty shares of stock, or, if the company or stockholders chose to take the stock, complainant would get the price thereof; so there was nothing to do to complete the trade,—the delay with the papers in said Humphrey's hands being merely to await the action of the stockholders, which would determine, not whether complainant and defendant traded, but whether the corporation would take the stock, or let complainant have it, as assignee of defendant's rights in the eighty shares.

" Defendant again says that, until the evening of the eighteenth of September, he had never heard of an intention on the part of the stockholders to take any other action than the making of an assessment, and that the proposal to sell out was a surprise to defendant; and he further says that it is not true that said corporation's stock is valueless, but that the company still maintains its corporate existence, and will

continue to do so, and that it has large and valuable franchises, and if the sale made by it is carried out, after it pays its debts, there will be an overplus to the credit of the stockholders; denies that the board of directors of said company, at a meeting on the twenty-first day of September, assented to the transfer of the eighty shares of stock, and affirms that the consent of the corporation to the transfer of the stock, and the only consent given, was, as before stated, at the stockholders' meeting on September 19.

"Defendant, further answering, says thàt all his dealing with complainant was done in the utmost good faith; that said Capital City Manufacturing Company has a valuable business, and has succeeded to the satisfaction of the stockholders, considering the capital invested, and, with the addition of the full amount of its subscribed capital, will prove an enterprise of great value; and that if any of the stockholders, prior to the evening of the eighteenth day of September, had entertained any thoughts of a sale of the assets, it was entirely unknown to defendant."

Proofs were taken in open court, and a decree rendered in favor of the complainant.

There is some conflict of testimony between complainant and defendant, but certain facts appear to be well established by proof. There is not much disagreement respecting the essentials of the agreement entered into between the parties, aside from the alleged representations, claimed to have been made as an inducement for complainant to enter into it.

It appears beyond doubt that complainant believed that he was buying stock in a going concern, and that, whatever embarrassments they were at the time laboring under, they were temporary, and would be fully relieved from by an assessment upon the stock; that defendant did know, and complainant did not know, that, as early as September 12, a vote had been taken at a stockholders' meeting, at which defendant was present, to entertain a proposition to sell and transfer the machinery, buildings, stock on hand, and miscellaneous property; that during the negotiations for exchange of property between these parties the defendant did not inform complainant of such proposition; that on the evening

of the same day the deed was left with Mr. Humphrey the defendant attended a stockholders' meeting, and there, as a stockholder, voted to accept the proposition for sale, and to authorize the directors of the company to convey the property on the proposition made, at 60 cents on the dollar of the inventory value of the property, being the sum of $13,645.47; that at the same meeting, after voting to dispose of all the property of the corporation, a motion was made that 80 shares of the capital stock of the corporation be transferred from F. B. Piatt to Charles J. Harris, which motion, on the request of the president, was withdrawn; that another spontaneous meeting of the stockholders was held on the nineteenth of September, at 11 o'clock A. M. Notice of the meeting was waived, and the written waiver was signed by defendant with others. At this meeting further authority was given to the board of directors to transfer the property of the corporation to the Capital City Wagon Company. The defendant voted in favor of this grant of authority. The by-law was, by resolution, waived requiring two weeks' notice to be given of sale of stock.

The board of directors, on the nineteenth of September, voted to accept the notes of the Capital City Wagon Company, to the amount of $13,645.48, in payment of the stock, tools, buildings, machinery, merchandise, and miscellaneous property purchased that day by the Capital City Wagon Company, and the transfer of such property to take immediate effect. The board then accepted and placed on file the proposition of defendant to sell complainant 80 shares of the capital stock of the Capital City Manufacturing Company, and instructed the secretary to transfer 80 shares of the capital stock of the said company, *then standing in the name of F. B. Piatt*, to Charles J. Harris. On the same day Piatt obtained a certified copy of the resolution directing the trans-

fer, presented it to Mr. Humphrey, and demanded and obtained the deed.

Of all these transactions complainant was ignorant; in fact, he was absent from the city.  The defendant, after the agreement had been entered into, and before it was fully consummated, by his active participation destroyed the entire value of the property which he had agreed to transfer to the complainant.  By his act he wrought such a change in the subject-matter of the contract as to authorize the other party to the agreement to rescind it *in toto*.  He had no right to depreciate the value of the stock which he had agreed to deliver to complainant by selling the entire assets of the corporation for 60 cents on the dollar.  From the moment this sale was consummated, the stock became worthless.  A transfer of such stock was not a carrying out of the contract.

We are satisfied that the decree of the circuit court is correct, and is affirmed, with costs.

The other Justices concurred.