FELD, *Appellant*, v. ROANOKE INVESTMENT COMPANY, *et al.*

Division Two, June 30, 1894.

123  603
136  489
123  603
142  574
123  603
77a 432

1. **Trustee:** DEED OF TRUST: RELEASE. A trustee in a deed of trust can not without the consent of the *cestui que trust* execute a release of the land, except on payment of the debt.

2. ——: ——: ——: Where a trustee is, by the deed of trust, given authority to execute releases, his acts in that regard, when unattended with fraud, accident or mistake, will be upheld.

3. **Corporation:** ALIENATION OF ASSETS: STOCKHOLDERS. While the directors of a corporation have full power to manage its business affairs, no final disposition of its property can be made to another corporation created for a different purpose, without the unanimous consent of its stockholders.

4. **Contract:** RESCISSION. Contracts will ordinarily not be rescinded unless the contracting parties can be placed *in statu quo*.

5. ——: ——. A contract will not be rescinded in whole or in part against the objection of the contracting parties owning the substantial interests in such contract.

6. **Corporation:** TRANSFER OF STOCK: ESTOPPEL. One can not be a party to a transfer of stock of a corporation in which he is a stockholder and then claim that such transfer was *ultra vires*.

7. ——: DIRECTOR: PRESUMPTION. A director of a corporation will be presumed to have knowledge of the resolutions of its board.

8. ——: TRANSFER OF STOCK: LACHES. Laches will bar relief to a stockholder claiming that transfer of corporate stock was *ultra vires*.

9. ————: PREFERRED STOCKHOLDERS: DIVIDENDS. An agreement of a corporation to pay preferred stockholders dividends or interest will be construed as subject to an implied condition that the payments will be made out of net profits which are legally applicable to the payment of dividends or interest.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The power of a trustee to release a deed of trust can only be a power to release upon payment. There was no payment of the indebtedness secured by the first deed of trust on the ninety-one acre tract. The release made by Winant's trustee, was, therefore, void. *Lakenan v. Robards*, 9 Mo. App. 179; *Armstrong v. Robards*, 81 Mo. 445; *Ferguson v. Glassford*, 68 Mich. 36; s. c., 35 N. W. Rep. 820. (2) A board of directors does not have authority to wind up the business of a corporation. Such a step can only be taken by the stockholders or be binding upon its ratification by them. The sale of the thirty-six acres and release of all claims against the Roanoke company by the interstate fair was never ratified by plaintiff and is, therefore, inoperative and void as to him. Cook on Stock and Stockholders and Corporation Laws [2 Ed.], secs. 629, 667; *Abbott v. Rubber Co.*, 33 Barb. 578; *Kean v. Johnson*, 9 N. J. Eq. 401; *Ervin v. Oregon R'y & Nav. Co.*, 27 Fed. Rep. 625; *Buford v. Packet Co.* 3 Mo. App. 159. (3) One corporation has no power to buy the stock of another, unless to do so be within the scope of the business for which the corporation purchasing was organized. The release of the deeds of trust and sale of the thirty-six acre tract was therefore void, or the defendant could at most, hold it only in trust for the benefit

of the interstate fair stockholders. Cook on Stock and Stockholders and Corporation Law [2 Ed.], secs. 315, 317, 63; *Trustees v. Woodward*, 4 Wheat. 518; *Bank v. Janes*, 95 N. Y. 115; *Dairy Co. v. Mooney*, 41 Mo. App. 665; *Franklin County v. Bank*, 68 Me. 43; *Mutual Savings, etc., Ass'n v. Meriden Agency*, 24 Conn. 159; *Matthews v. Skinker*, 62 Mo. 329; *Talmage v. Peel*, 7 N. Y. 328; *Railroad v. Tanner*, L. R. 8 Ch. App. 152; Perry on Trusts, sec. 334; *Pearce v. Railroad*, 21 How. 441. (4) The transfer attempted between the board of directors of the interstate fair and defendant company was in violation of plaintiff's rights under his contract with the latter company and entitles him to the relief prayed for. Plaintiff had all the rights of a shareholder in the interstate fair under his contract with defendant. *Bissell v. Railroad*, 22 N. Y. 258; *Solomon v. Laing*, 12 Beav. 339; *Baldwin v. Canfield*, 26 Minn. 43; *Harris v. Piatt*, 64 Mich. 105; *Taylor v. Scoville*, 3 Hun, 301; *Railroad v. Shirley*, 45 Tex. 355. (5) Plaintiffs cause of action accrued upon discovery of the fraud and not before. *Lane v. Latimer*, 41 Ga. 171. (6) Plaintiff is the proper party to bring this action and is entitled to have the contract between the two companies set aside at his suit. *Bacon v. Robertson*, 18 How. 480; *Linn v. Robertson*, 6 Wall. 277; *Nathan v. Tompkins*, 82 Ala. 437; *Rothwell v. Robinson*, 39 Minn. 1; *Board v. Railroad*, 50 Ind. 85; *Kean v. Johnson*, 9 N. J. Eq. 401; Story on Equity Pleading, sec. 542.

*C. O. Tichenor* for respondents.

(1) The old company dying gave birth to the new. The land became so valuable that the stockholders could not resist the temptation to convert it into money; the old company had to end so soon as it sold

and the new company was organized to subdivide and sell; the Roanoke got all the lands of the Fair Company and none other, and platted them in order to sell to the best advantage.    To say that this could be done is not to announce any startling proposition, for it often happens.    *Railroad v. Georgia*, 98 U. S. 363; *Railroad v. Georgia*, 92 U. S. 673; *Transportation Co.'s Appeal*, 101 Pa. 582; *Powell v. Railroad*, 42 Mo. 66; *Thompson v. Abbott*, 61 Mo. 177.    (2) When a corporation ends without creditors, the assets must be sold, unless they are of such a kind as to be divided, so that in schemes of dissolution sometimes the stock in the new company is issued to the old company, which divides it up among its stockholders, and sometimes it is issued directly to them by the new company.    (3) Selling land and releasing a deed of trust for part of the purchase money can not be considered *ultra vires*.    *Railroad v. Railroad*, 145 U. S. 408.    (4) Even if plaintiff was not present at the meetings of the directors of the corporation, he, being a director of the Roanoke company, is presumed to know what was done. See *Kitchen v. Railroad*, 69 Mo. 226.    (5) Had he originally been protesting against, instead of promoting, the scheme of winding up the Fair Company, he could not win this suit, for he has acquiesced in the state of affairs of which he is complaining.    *Kitchen v. Railroad*, 69 Mo. 225; *Brewing Co. v. Schneider*, 110 Mo. 90; *Combs v. Sullivan Co.*, 105 Mo. 234; *Bank v. Alden*, 129 U. S. 372.    (6) Even a corporation may ratify by acquiescing.    *Supervisors v. Schenck*, 5 Wall. 782; *Bank v. Fricke*, 75 Mo. 178.    (7) And this court will take notice that others will be affected by the litigation, although they are not parties to the suit.    *Goodin v. City*, 113 Mo. 272.

BURGESS, J.—On the ninth day of May, 1882, the Kansas City Interstate Fair was duly incorporated under the laws of this state for the purpose of encouraging agriculture, and on May 25, 1882, one McGee and wife conveyed to it ninety-two and three-tenths acres of ground for $39,227.50. It also acquired by purchase a smaller tract of thirty-six acres for the same purpose, fair grounds.

The property having largely increased in value the stockholders determined to wind up the affairs of the corporation and as it could not engage in selling lands under its charter, a new company, called the Roanoke Investment Company, was organized June 24, 1887, to plat and sell the lands and to this company the large tract was sold on July 2, 1887, for $606,337.14. A part of the purchase money was paid in cash, the balance $429,820.75 was secured by deed of trust in which defendant Winants was made trustee. The plaintiff received his part of the cash, which amounted to about $26,000. Out of a total of four hundred and eighty-eight shares of stock in the Kansas City Interstate Fair, plaintiff owned one hundred and three of a par value of $100, but the stock was at a premium. He sold all except seventy-four shares which are involved in this controversy.

After the sale of the land to the Roanoke Investment Company, for convenience, Winants, the trustee in the deed of trust, released the same and accepted in lieu thereof, separate deeds of trust upon the land as it had been subdivided into lots but amounting, in the aggregate, to the amount secured by the original deed of trust. Of this arrangement plaintiff claims that he had no knowledge or information until within a few days before the commencement of this suit, and he also claims that the evidence shows that it was without authority from the board of directors.

The original capital stock of the Roanoke Company was $500,000 but in order to enable it to obtain the remaining thirty-six acres of land belonging to the Interstate Fair it increased its capital stock $500,000, the increase being in the nature of preferred stock. The common stock was afterwards by consent of the stockholders reduced to $250,000. The Roanoke Investment Company entered into separate agreements with the various stockholders of the Interstate Fair by which those stockholders transferred their stock to the Roanoke Investment Company in exchange for preferred stock in that company by which nine shares of the preferred stock were exchanged for one share of the Interstate Fair stock.

Plaintiff on the twenty-fifth day of July, 1889, made the following agreement in writing with the Roanoke Investment Company and Witten McDonald, trustee, to wit:

"This tripartite agreement, executed in triplicate, made and entered into by and between J. Feld, first party, and the Roanoke Investment Company, second party, and Witten McDonald, third party, witnesseth: That first party has this day exchanged with second party, seventy-four shares of Interstate Fair Association stock, for six hundred and sixty-six shares of the perferred stock of the Roanoke Investment Company, of the par value of $66,600.

"That said exchange is made by the first party in consideration of said Roanoke Investment Company agreeing, and the distinct understanding and agreement with second party, its board of directors and stockholders, that first party shall be chosen to, placed and kept in the board of directors of said Roanoke Investment Company, immediately upon him becoming a stockholder therein and the further understanding and agreement between the parties thereto, that the said

Interstate Fair stock, so exchanged, shall be transferred to and held by the said Witten McDonald in trust for first and second parties, and for the purposes hereinafter recited.

"*First.* For the use and benefit of second party, as the consideration paid for said Roanoke stock by first party and the covenants and agreements herein made to first party by second party.

"*Second.* In escrow as a pledge for the fulfillment of the second party's undertaking with first party.

"*Third.* That the title and possession of said stock be held by said third party until the affairs of the said Interstate Fair Association are wound up, and said association is ready to pass out of existence, when so determined by its board of directors, in which event said stock shall by said third party, with the mutual consent of first and second parties in writing, be delivered up to and canceled by the board of directors of the Interstate Fair Association.

"It is further agreed by and between first and second parties, that in consideration of the exchange and sale of said Interstate Fair stock for said Roanoke Investment Company stock by first party as herein specified, same shall, and does hereby, carry with it to first party all the rights, interests and benefits accruing to or in any wise had, held or possessed by any and all other preferred stockholders in said Roanoke Investment Company, by reason of an agreement or stipulation heretofore entered into by and between second party, and any and all of said stockholders of said Roanoke Investment Company.

"That the perferred stock of the said Roanoke Investment Company, so held by first party, shall bear seven per cent. interest per annum from July 1, 1889, payable semiannually, and shall have preference in

payment, alike with the principal of said preferred stock, and in the distribution of the capital of said Roanoke Company, the common stockholders of said company shall have and receive nothing until the principal and interest of said Roanoke preferred stock is paid in full.

"When the stockholders of the preferred stock of the Roanoke Company, have been paid in full, a sum of money equal to the face value of said stock and the interest thereon as before stipulated, then the common stock shall be paid in full, par value, with seven per cent. interest from July 1, 1887, and the remaining surplus of the property of said company shall be divided between all stockholders, preferred and common, share and share alike. At or before the end of four years from July 1, 1889, the affairs of the Roanoke Investment Company shall be wound up.

"*Second party for and in consideration of the sale and exchange by first party of the seventy-four shares of Interstate Fair stock on the conditions above stated, hereby assents to each and every condition above stated, and sells and transfers to first party the said six hundred and sixty-six shares of preferred stock in the Roanoke Investment company, and further covenants and agrees to fulfill and perform each and every condition above recited, as part of the consideration of said sale on the part of the second party.*

"Third party hereby accepts the trust herein created and agrees to perform the duties thereby imposed.

"Witness our hands to three copies hereof, this twenty-fifth day of July, A. D. 1889."

On the third day of August, 1889, defendant company procured from the Interstate Fair board of directors, who had each retained one share for the purpose of keeping up the organization, a warranty

deed to the thirty-six acres of land and a release of the deed of trust securing the indebtedness of $429,820.75, balance of the purchase money. This transaction plaintiff also claims was without his knowledge or consent and that it was a disposition of all the assets of the company, the only consideration being four thousand, three hundred and ninety-two shares of the preferred stock of the Raonoke Company for which no certificates of stock were ever issued to the Interstate Fair Company.

At that time the Roanoke Investment company owned all the stock in the Interstate Fair, except one share held by each director of that company. At the time plaintiff received the certificates of preferred stock in the defendant company he also received by way of dividends thereon the sum of $6,489 but has received nothing since.

Plaintiff prosecutes this suit to have the seventy-four shares of the Interstate Fair Association stock transferred by him to defendant company for preferred stock in that company held as a pledge or returned to him on account of defendant's failure to fulfill its contract, and to have the release of the deed of trust because in fraud of his rights and void and offers to return the six hundred and sixty-six shares of preferred stock in defendant company.

There was a judgment and finding for the defendants from which plaintiff appealed.

The first point of contention upon the part of the plaintiff is that the power of a trustee to release a deed of trust can only be a power to release upon payment; that there was no payment of the indebtedness secured by the first deed of trust on the ninety-one acre tract, and that therefore the release made by Winants, trustee, was void. The first proposition seems to be well settled law where the release is without the authority

of the *cestui que trust. Lakenan v. Robards*, 9 Mo. App. 179; *Armstrong v. Robards*, 81 Mo. 445; *Ferguson v. Glassford*, 68 Mich. 36.

This position we understand is not controverted by counsel for defendant, who claims that the trustee in the deed of trust had the power outside of the deed to release it; that by subdividing the land into smaller tracts, the debt into smaller sums, and apportioning the debt according to the number and value of the lots, and by taking a deed of trust on each lot to secure its proportionate part of the debt, the result is the same. There is no pretense that the release was unfair or fraudulent, the only contention being that it was without authority. It was executed on the third day of August, 1889, and while it is contended that plaintiff had no knowledge of it until just before the institution of this suit yet the record of the Fair Company shows that on the fifth day of October, 1887, on motion of Mr. Chick, one of its directors, plaintiff was one of a committee appointed by the president of the association to appraise the lots platted by the Roanoke Investment Company, and that on October 19 following, said committee made their report showing an aggregate appraisement of said lots at $429,820.75, the adoption of the report and the issuance of a warrant to plaintiff in payment for his services in appraising said lots. Chick also testified as a witness that plaintiff must have known, at the time it was done, of the release of the deed of trust. The report shows that each lot was appraised separately and at a distinct sum, to secure the payment of which a note and deed of trust were executed. These were the deeds of trust released by the deed of release of August 3, 1889. By express terms of the first and large mortgage the trustee therein named, Winants, is given power to release the same, and in the absence of fraud his release was valid especially as he

simply took other like and equally as good security in lieu thereof. Not only this, but by a resolution of the board of the Roanoke Company passed May 31, 1887, Winants was given general power and authority to make releases of deeds of trust from time to time which were held by said company. The deeds of release were not executed without authority and being free from fraud and unattended by accident or mistake, we must rule adversely to plaintiff on this contention.

Another contention is that the board of directors of the Interstate Fair did not have authority to wind up the business of the corporation; that such a thing could not be done by the stockholders, or by subsequent ratification by them, and that as the sale of the thirty-six acres of land and the release of all claims against the Roanoke Company by the Interstate Fair was never ratified by the stockholders and especially by plaintiff, it is void and inoperative as to him.

The officers of a corporation can not, against the wishes of its stockholders or any one of them, sell and transfer the entire property from which it derives its emoluments or which forms the basis of its business operations. To do so would be to commit a breach, if not of the express terms of the contract, of its implied terms by which the general objects defined in its charter would be diverted and in effect destroyed. With respect of the management of the business affairs of a corporation such matters are confided to a board of directors or managers who are endowed with full power to do whatever they may think for the best interest of those whom they represent within the scope and meaning of the charter under which they act, but when it comes to a final disposition of the corporate property for the purpose of forming another and different corporation for an entirely different and distinct enterprise it can only be done by the unanimous consent of

all of its stockholders. *Buford v. Packet Co.*, 3 Mo. App. 159; *Abbot v. Rubber Company*, 33 Barb. 578. Nor can the stock of such new corporation be forced upon the dissenting stockholders in payment of their stock in the original company, who are entitled to payment in money. 2 Cook on Stock and Stockholders and Corporation Law, sec. 667.

But the object here, as shown by the contract, was in the main to wind up the affairs of the Interstate Fair Association and to pass it out of existence, and, with that object in view plaintiff exchanged seventy-four shares of Interstate Fair Association stock for six hundred and sixty-six shares of preferred stock of the Roanoke Investment Company of the par value of $66,600. This stock was taken by plaintiff in lieu of money which he had the right to demand which was in effect putting the assets or the capital stock of the old company to that extent into the new corporation. The number of shares of the preferred stock issued by the Roanoke Investment Company to the Kansas City Interstate Fair for said thirty-six acres of land was forty-three hundred and ninety-two, and the stock received by plaintiff for his part thereof being in the proportion of nine shares of preferred stock for one share of Fair stock in accordance with the terms of the agreement. In this transaction it can not be said that the Roanoke was purchasing Fair stock for it had bought all the remaining assets of the Fair Company and paid therefor in its own preferred stock, thus acquiring all the assets of the Interstate Association to all of which plaintiff, with full knowledge, seems to have acquiesced, if indeed he did not participate.

Although the transfer by the Interstate Fair Company of all its property for preferred stock in the Roanoke Investment Company, may have been in violation of the terms of the contract between plaintiff and the

Roanoke, it does not necessarily follow that the contract must be set aside. Contracts as a general thing are not rescinded unless the contracting parties can thereby or as a result thereof be placed *in statu quo*. Nor can the contract here sought to be rescinded be set aside or canceled in part against the consent of all the contracting parties who have any substantial interest in the contract. It is not sought to set aside the deed by the Fair Company to the Roanoke Company for the thirty-six acre tract of land nor is the Fair Company made a party to this suit, nor is there fraud charged anywhere in the petition.

He should, we think, as was said in *Dimpfell v. Railroad*, 110 U. S. 209, "make a better showing of wrongs which he has suffered, and also of efforts to obtain relief against them, before a court of equity will interfere and set aside the transactions of  *  *  * its directors. It is not enough that there may be a doubt as to the authority of the directors or as to the wisdom of their proceedings." That case was a suit brought by an individual stockholder in which another stockholder afterwards joined, to set aside a contract by which the Ohio and Mississippi Railway Company became the owner of a portion of its road known as the Springfield division, and to obtain a decree declaring the bonds issued by the company and secured by a mortgage upon that division, null and void. See, also, *Slatterly v. Transportation Co.*, 91 Mo. 217.

There can be no question but that the Fair Company had the right to take stock in the Roanoke Company for those of its stockholders who were willing to take it in lieu of money. Of this preferred stock, amounting to $439,200, the Fair Company got that which was distributed among its stockholders, except the nine shares held for plaintiff under the contract. He now claims that the very arrangement in which he participated and

by which he received the preferred stock was *ultra
vires*, and seeks to have the contract rescinded upon
that ground; this he can not do. He must be consid-
ered as a party to the unlawful contract, if indeed it be
unlawful, and as not being entitled to the assistance of
a court of equity to set it aside. *Railroad v. Railroad*,
145 U. S. 393.

The case is barren of fraud. The plaintiff received
dividends upon his preferred stock in the Roanoke
Investment Company, at the time he bought it, a part
of which stock he had sold before the commencement
of this suit, which he did not do for nearly two years
after he received the stock. In the meantime he was
elected a director of the Roanoke Company according
to the terms of the contract and for some time acted in
that capacity. The old company was a corporation
merely in name, whose organization was kept up merely
to give it the semblance of existence, merely a shadow
without a substance.

On the second day of August, 1889, at an adjourned
meeting of the board of directors of the Kansas City
Interstate Fair Association the following resolutions
were passed, to wit: "Adjourned meeting board of
directors, 3:30 o'clock P. M., at National Bank of
Kansas City. Present: President Slavens, Directors
Chick, Webster, M. J. Payne, Trumbull, Esslinger,
Bovard and F. A. Payne.

"The following resolution was offered by Captain
Webster, which, receiving a second, was adopted:

"Whereas, The Kansas City Interstate Fair holds
divers notes of Roanoke Investment Company, aggre-
gating three hundred and eighty-four thousand, eight
hundred and twenty and seventy-five one hundredths
($384,820.75) dollars exclusive of interest, all of which
said notes are secured by divers deeds of trust on the

lots in the tracts of land which is subdivided into lots and known as 'Roanoke;' and

"Whereas, The Kansas City Interstate Fair Company own thirty-six (36) acres of land, more or less, adjoining the said track known as 'Roanoke,' which it desires to dispose of on advantageous terms;

"Now, therefore, *be it resolved:*

"*First.* That the president and secretary of this company be and they are hereby directed and empowered to make and submit to the said Roanoke Investment Company the following proposition, to wit: That the Kansas City Interstate Fair will convey by warranty deed the said thirty-six (36) acre tract of land to the said Roanoke Investment Company, and will cancel release and surrender to said Roanoke Investment Company all of said notes as fully paid, and will cause all the deeds of trust given to secure the payment of said notes to be fully released and satisfied of record in a manner satisfactory to said Roanoke Investment Company, if said Roanoke Investment Company in exchanging therefor will duly issue and deliver, or cause to be duly issued and delivered, to the Kansas City Interstate Fair, or its assigns, forty-three hundred and ninety-two (4392) shares of preferred capital stock of said Roanoke Investment Company, fully paid up, of the par value of one hundred ($100) dollars per share, in such manner as to vest an absolute title to said shares in the Kansas City Interstate Fair and its assigns.

"*Second.* That if the proposition shall be accepted by the said Roanoke Investment Company, the president and secretary of this company be and they are hereby directed and empowered then, in that event, to convey the said thirty-six (36) acres of land to the said Roanoke Investment Company by good and warranty deed, and to cancel, release and surrender, as fully

paid, all of the said notes held by this company against the said Roanoke Investment Company, and fully release all of the lands of the said Roanoke Investment Company from the liens of the deeds of trust given to secure the payment of said notes, and to receive from the said Roanoke Investment Company in exchange therefor the forty-three hundred and ninety-two (4392) shares of the preferred capital stock of the said Roanoke Investment Company, fully paid up; and to do any and all things on behalf of this company which may be necessary to be done in order to comply with the terms of said proposition and effectuate such exchange.

"Upon motion of Mr. Bernard, board adjourned, subject to the call of the president.

"M. J. PAYNE, Sec'y."

Although plaintiff was at the time a director of said association it is claimed that he was not present at the time of the adoption of said resolutions and had no knowledge thereof. The facts and circumstances in proof tend strongly to show that he had notice, but conceding that he was not present, as he was a director, the presumption is that he had knowledge of the passage of the resolutions. Such presumption is to be indulged, even in the case of a stockholder (*Kitchen v. Railroad*, 69 Mo. 226; *Evans v. Railroad*, 64 Mo. 453); and certainly as against a director.

There was no secret about the passage of the resolutions which appear upon the record of the corporation and plaintiff must have known of their existence. Morover, he entered into the contract with the defendant corporation on the twenty-fifth day of July, 1889, and did not institute this suit until the eighth day of July, 1891, thus acquiescing in the transactions between the corporations for near two years with respect of the the state of affairs of which he now complains. In

*Graham v. Railroad*, 2 M. & Gord. 160, it was held, that where stockholders acquiesced for eighteen months, having had the means of knowing the acts complained of "by not coming earlier" they had "precluded themselves from asking for the exercise of the extraordinary jurisdiction of the court."

In *Kitchen v. Railroad, supra*, the court in speaking with respect of the rule thus announced in that and other cases says: "The doctrine as recognized in the above cases is that the option to avoid such a sale as is here complained of must be exercised in a reasonable time, and unless so exercised equitable relief will be denied, especially when new rights, interests and equities have arisen and the parties can not be restored to their original position." See, also, *Schilling & Schneider Brewing Co. v. Schneider*, 110 Mo. 90; *Bank v. Alden*, 129 U. S. 372.

The case of *Harris v. Piatt*, 64 Mich. 105, relied upon by plaintiff is predicated chiefly upon the ground of the ignorance of the plaintiff in that case of the action of the stockholders in ordering a sale of the corporate assets by which the stock of a corporation in which he was a stockholder was rendered practically valueless.

In *Taylor v. Scoville*, 3 Hun, 301, and also of *Railroad v. Shirley*, 45 Tex, 355, the right to rescind the contract was bottomed upon the ground of fraud, and fraudulent representations.

The relation of pledgor and pledgee has at no time existed between the parties to the contract sought to be rescinded, and no right to a recovery could be predicated thereof. Nor is the action to redeem a pledge, but is to rescind a contract between plaintiff and defendant in which plaintiff tenders back that portion of the Roanoke stock received by him, and which he has not sold, to wit, one hundred and three shares less twenty-nine. There is no evidence that the Roanoke Company

is insolvent.  On the contrary, the evidence shows that its corporate property largely exceeds in value all of its indebtedness.

It is further claimed by plaintiff that the condition of the contract has been broken because of the failure of the Roanoke Company to pay dividends on the stock held by him, as they became due and payable according to the terms thereof.  The contract provides that the preferred stock shall bear seven per cent. interest per annum from July 1, 1889, payable semiannually, and shall have preference in payment alike with the principal of said preferred stock and be paid in full before the common stock shall receive anything.  The contract also provides that the Roanoke Company shall have four years from the first day of July, 1889, in which to wind up its affairs, which time had not expired at the time of the commencement of this suit.

But the failure to pay the interest semiannually in the absence of funds by the corporation with which to pay was no substantial breach of the contract. 1 Morawetz on Private Corporations, sec. 457, says:  "The agreement of a corporation to pay to preferred stockholders certain annual dividends, is always subject to an implied condition that the payment shall be made only out of net profits which are legally applicable to the payment of dividends.  This is true whether the agreed payments be called 'dividends' or 'interest,' and whether they be guaranteed or simply promised.  It would be contrary to fundamental principles to allow the capital of a corporation to be reduced by distribution among the shareholders in any form."

Upon the ground, then, that there was a violation of the contract on the part of the defendant company upon failure to pay the interest semiannually, plaintiff clearly had no cause of action at the time of the commencement of this suit.

We perceive no error in the record authorizing an interference with the judgment, and it is hereby affirmed, with the concurrence of the other judges of this division.