INTEGRITY MINING AND MILLING COMPANY, Respondent, v. R. S. MOORE et al., Appellants.

Kansas City Court of Appeals, April 6, 1908.

1. FORMER ADJUDICATION: Justice of the Peace: Appeal: Dismissal. Where on appeal from the judgment of a justice, the plaintiff dismisses his case, such judgment is not available as a defense on a plea of former adjudication.

2. INJUNCTION: Title to Land: Mining License: Unlawful Detainer. Injunction will not lie to determine the title to land or the mines located thereunder, where the same are held under claim of right and color of title; however, a licensee as such can not maintain unlawful detainer for possession.

3. ———: **Trespass: Mining License: Unlawful Detainer.** Where the complaining party can not maintain an action for possession, he is entitled to the remedy by injunction to restrain a trespasser whose actions are ruinous to the property.

4. **CORPORATION: Power of President: Disposing of Property: Mining License.** The president of a mining corporation without authority of the board of directors has no power to dispose of the license to mine certain lands held by the corporation, though he may have the right to preserve and manage the general business of the company.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*H. W. Currey* and *Pritchett & Pritchett* for appellants.

(1)   The action is to enjoin a trespass on real property, in violation of plaintiff's alleged right to mine the same. The petition fails to state that plaintiff, or his assignor was or ever had been in possession of the property, and for that reason fails to state a cause of action. Powell v. Canady, 95 Mo. App. 713, Gildersleeve v. Overstolz, 97 Mo. App. 303. (2)   The right to mine this land was in dispute. Defendants were in possession, mining the same, under a contract in writing executed by the plaintiff, which gave them the right to mine. Had plaintiff brought a suit to set aside this contract on the grounds that its president had no power to bind it by same, a temporary writ enjoining defendants pending such suit might have rightfully been issued. But the fact that plaintiff's right was in dispute or was uncertain or not determined is sufficient to reverse this case. Sill v. Goodyear, 80 Mo. App. 128; Heman v. Wade, 74 Mo. App. 342; Smith v. Jameson, 91 Mo. 13; Schelkamp v. Schroeder, 45 Mo. 505. (3)   Whether the contract read in evidence signed by plaintiff was executed by an officer having no authority to bind it cannot, properly be determined in this case.

The plaintiff had the right to show that the agreement was a mere sham gotten up to justify defendant's acts, but could go no further. It admits the execution of the contracts and Moon's good faith. This alone should reverse the case. Houch v. Patty, 100 Mo. App. 310. (4) There is no testimony showing that the defendants had any notice or knowledge of the minutes of the plaintiff company or of its by-laws. Neither the minutes nor the by-laws were, therefore, admissible in evidence against the defendants. Cape, etc., Co. v. Kimmel, 58 Mo. 63; Stinde v. Scharff, 36 Mo. App. 15; Sparks v. The Dispatch, etc., Co., 104 Mo. 534; Walker v. Wilmington (S. C.), 1 S. E. 369; McCreery v. Garvan, 17 S. E. (S. C.) 828, 829. (5) The provisions of the order appointing Myers general manager, subject to the supervision of the board of directors, constitute no limitation upon his authority. McCreery v. Garvan, 17 S. E. (S. C.) 828, 829. (6) The corporation had power to enter into the contract giving defendants the right to mine the ground. It sent its president here to act for it in the premises. Defendants had no knowledge of any limitations on his authority. He assumed to have the authority to make the contract and it was within his apparent powers. Under such circumstances, the contract binds the plaintiff corporation. Webster v. Wray, 17 Neb. 579; Mechem on Agency, sec. 283, p. 186; Butler v. Maples, 9 Wall (U. S.), 766, 773; Edwards v. Insurance Co., 100 Mo. App. 711. (7) Plaintiff sent Myers to defendant to adjust the matter of the contract to mine, which defendant claimed; Myers did adjust the matter, gave defendant authority to mine, and plaintiff is bound by all Myers did in the premises. Experiment Co. v. Harris, 21 N. E. (Ind.), 340, 341; Mo. etc. Co. v. German, 84 Tex. 143, 19 S. W. 461; Nowack v. Railroad, 166 N. Y. 433, 60 N. E. 432; Bank v. Railroad, 137 N. Y. 231.

*W. R. Robertson* for respondent.

(1)   The attempted defense of *res adjudicata* is not well pleaded, because it is the duty of the pleader to allege the facts on which the adjudication was had and not his conclusions.   Pond v. Huling, 101 S. W. 115. (2)   Conceding for the purpose of the argument that witness Myers had authority to sublet this ground, yet it is clear that the right sought to be obtained would have to be given by a writing signed and delivered. See cases cited under 3 and Boone v. Stover, 66 Mo. 432; Fuhr v. Dean,   26 Mo. 120;   Hammerslough v. Cheatam, 84 Mo. 19. (3) If the contention of defendants is that the president of plaintiff company as an incident to the working of the mines on the ground in controversy, had the further implied power to sublet any part of it then he would of necessity have the authority to sublet all of it or to sell all of it, but this is not the law.   Hyde v. Larkin, 35 Mo. App. 370; Ferguson v. Venice Trans. Co., 79 Mo. App. 352; Hall v. Bank, 145 Mo. 427; State v. Perkins, 90 Mo. App. 609; Jones v. Williams, 139 Mo. 24.

BROADDUS, P. J.—This is a suit by injunction. The agreed facts are as follows:  A corporation known as   the   Big   Stick   Mining   Company   held   an   unrecorded   mining   lease   on   a   certain   tract   of   land in   Jasper   county.     On   the   12th   day   of   November, 1906,   this   company   in   writing   gave   to   the   Federal Mining   Company   the   right   to   prospect   and   mine   for lead   and   zinc   under   or   on   the   lands   in   said   lease   for and   during   the   time   from   that   date   until   the   17th   day of   September, 1916, subject to compliance by the latter   to   certain   provisions   and   requirements,   twenty-one in   number,   one   of   which   provides   that   no   part   of   said leased   premises   shall   be   sublet   or   any   interest   therein assigned   without   the   written   consent   of   the   first   named party.   Number 4 provides that: "No interest in said

lots or the ores therein shall be acquired; held or claimed, or in any wise affected by virtue of this contract or by virtue of mining or working therein under or by virtue hereof, . . . ." Numbers 7, 8, and 9 provide that the Big Stick Company will pay to the Federal Mining Company "as full compensation for all labor performed in prospecting and mining on said lots or tracts of land as follows: For lead ore properly cleaned, the cash market price thereof, less seventeen and one-half per centum. For zinc ore properly cleaned the cash market value thereof, less, seventeen and one-half per centum."

The Federal Mining Company having first obtained the written consent of the Big Stick Mining Company, on the 21st of December, 1906, assigned to the plaintiff all its right, title and interest in said lease. On the 23d day of March, 1907, J. E. Myers as president of the plaintiff issued two permits for mining on said lease. One to S. S. Moon to mine on lots 29 and 30, and the other to Sam Moon and John H. Ragland also to mine on said lots. The permit restricted the right of said parties to mine the upper run of ore which had been located at from 90 to 110 feet below the surface of the earth.

The petition after alleging the facts stated recites: "That on or about March 23, 1907, the defendants R. S. Moon and Walter Ragland commenced negotiations with one J. E. Myers, the then president of plaintiff corporation for a permit to work what they designated as the upper run of ore in said land at between the depth of 90 and 110 feet . . . and proposing to be governed by the terms and conditions named in said contract with the said landowner of lessee and to pay a royalty on all ores of twenty-five per cent; that though said negotiation did not terminate in any permit being given or granted to the said defendants or either of them, or in their acquiring any right to prospect for or mine

ores in said land or in any way to interfere with the plaintiff's rights thereon," the defendants have gone upon the land, "and have begun sinking or threatening to sink a shaft thereon for the avowed purpose of mining therefrom" the ores. The other defendants named are alleged to be aiding and abetting those already named in their purposes.

The defendants in their answer set up as a defense the permit mentioned given by J. C. Myers, the president of the plaintiff; and further they went upon the premises with the consent, knowledge, advise, and permission of the plaintiff and the Big Stick Mining Company. Further the answer alleges a former adjudication of the matters in issue in a proceeding before a justice of the peace but as plaintiff dismissed the case after appeal to the circuit court, said defense is not available. The judgment was for the plaintiff from which defendant appealed.

As a preliminary the question is raised as to the right of the plaintiff to remedy by injunction as it is claimed that defendants were in possession under claim of right and color of title. "An injunction will not lie as an original and independent proceeding to determine the title to land, and mines located thereunder, where the same are held by defendants, under claim of right and color of title." [Smith v. Jameson, 91 Mo. 13.] The plaintiff is but a licensee and as such cannot maintain an action for unlawful detainer. [Lytle v. James, 98 Mo. App. 337; Zinc Co. v. Amsden, 125 Mo. App. 512; Lowe v. Smelting Co., 89 Mo. App. 680.]

But as we view the case it is an injunction to restrain a trespass upon the possession of plaintiff. In such a case where an action for possession will not lie the party complaining is entitled to the remedy by injunction to restrain the trespasser, otherwise he would be without any remedy whatever. [Lytle v. James, supra; Continental Zinc Co. v. Amsden, supra.] And,

"Where the acts done or threatened, are ruinous to the property trespassed upon, or of a character to permanently injure its permanent enjoyment in the future, injunction is the proper remedy." [Eckelkamp v. Schrader, 45 Mo. 505; Lytle v. James, supra.]

The defendants justify their right to mine the lots under and by virtue of said permit, issued to them by Myers, plaintiff's president and general manager. But plaintiff insists that said Myers had no authority to issue said permit and that consequently it is a nullity and no justification for defendant's trespass. The permit was issued by Myers without any authority from plaintiff's board of directors. Section 1320, Revised Statutes 1899, provides that, "the property and business of a corporation shall be controlled by a board of directors." The statute does not mean that every business act performed shall be in pursuance of an order of the directors of the corporation. It contemplates that the directors shall appoint officers and agents to control the business affairs of the corporation and that the acts of such officers and agents while acting within the scope of their authority shall be taken as the act of the corporation itself. Myers as the president and general manager of the plaintiff was clothed with full authority to perform all the duties pertaining to the two offices, in the general management of the business, and control of all the inferior offices and agents in the performance of their duties. He had general charge of the corporation property and could perform all acts necessary to its keeping and preservation, but there were things he could not do. He could not borrow money on the credit of his company nor sell its property or dispose of its assets. [Feld v. Investment Co., 123 Mo. 603; Ferguson v. Transportation Co., 79 Mo. App. 352.]

Defendants have cited certain authorities to the effect that "where an officer of a corporation has been put in control of its affairs and permitted to manage

and conduct its business his authority to bind the corporation will be inferred from the ostensible authority thus conferred upon him, . . ." [Rosenbaum v. Gilliam, 101 Mo. App. 126; Moore v. Manufacturing Co., 113 Mo. 98.] These cases refer to the general management of the affairs of a corporation and have no application to this case. The fact that Myers was the chief officer of the corporation and its general manager did confer such ostensible authority as would bind the corporation to third parties who dealt with him in the general management of its business but no further. To hold otherwise would place in jeopardy the property of every corporation in the land. All would be at the mercy of their presidents and general managers. We hold that in order to effectuate a sale of the property of a corporation or its transfer to another corporation the authority of its directors must be had. 1 Beach on Private Corporations, section 202, states the proper rule thus: "In the absence of legislative enactment or provisions made in the by-laws, corporations usually act through their president or those representing him. He being the legal head of the body, when an act pertaining to the business of the company is performed by him the presumption will be indulged that the act is legally done and is binding upon the body. But where under its charter a corporation can only act through its board of directors its president cannot without the authority of the board enter into contracts in its behalf except as to matters of simple administration which of necessity should be managed by him without authority from them." It follows from what has been said that the judgment of the circuit court should be affirmed. All concur.