THOMAS J. BUFORD, Appellant, *v.* THE KEOKUK NORTHERN LINE PACKET COMPANY *et al.*, Respondents.

December 7, 1876.

1. Officers of a corporation cannot, as a general rule, convey away all the property of the corporation against the wishes of a single stockholder, but the stockholder's contract with the corporation cannot bind the corporation to continue its business at a great pecuniary loss; nor does the law of public policy oppose the discontinuance of a corporation which is on the eve of extinction by the expiration of its charter.

2. The officers of a corporation which is on the eve of dissolution by the operation of law may, in the exercise of a sound discretion, transfer its assets to another corporation and take in payment the stock of such other, and convert it into money, for the purposes of liquidation.

3. A party who has not himself been defrauded, but rather benefited, by a transaction will not be heard to complain of frauds against third persons who make no complaint, especially where these third persons have instituted other proceedings for the purpose of settling the matter complained of.

4. A party purchasing property in litigation will not be held to be an innocent purchaser. The pendency of the suit imparts notice to all of the claim or title in litigation.

5. A fraudulent purpose is harmless if the fact itself is lawful, and unattended by any wrongful effect.

6. Counsel-fees are allowed in favor of defendant, upon dissolution of an injunction, upon the basis that he has been compelled to employ aid in ridding himself of an unjust restriction forced upon him by the act of plaintiff; and this without regard to whether the merits of the cause were passed upon on the motion to dissolve.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*James Taussig*, for appellant, cited: Phosphate of Lime Co. *v.* Green, Law Rep. 7 C. P. 43; Zabriskie *v.* Hackensack, etc., R. R. Co., 3 C. E. Green, 78; Sharon Canal Co. *v.* Fulton Bank, 7 Wend. 412; Smith *v.* Smith, 3 Desau. 557; *In re* Bridgeport Old Brewery Co., Law Rep. 2 Ch. 191; Gross' Stat. Ill. 1818–1869, 2d ed., 95, 451–457; Rev. Stat. Ill. 1874, pp. 294, 295; Caldwell *v.* City of Alton, 33 Ill. 416; Trustees *v.* McConnell, 12 Ill. 140; McIntire *v.* Preston, 5 Gilm. 60; Town *v.* Metzger, 21 Ill. 205; Illinois,

etc., College v. Cooper, 25 Ill. 148; Metropolitan Bank v. Godfrey et al., 23 Ill. 579, 602, 603, and notes; Marine Bank of Chicago v. Ogden, 29 Ill. 248; Pierce v. Madison, etc., R. R. Co., 21 How. 441; Whittenton Mills v. Upton, 10 Gray, 582; Susquehanna, etc., Co. v. Bonham, 9 Watts & S. 27; Solomons v. Laing, 12 Beav. 339; s. c., 12 Beav. 377; Abbott v. American, etc., Co., 33 Barb. 578; The Central R. R. Co. v. Collins, 40 Ga. 582; Sears v. Hotchkiss, 25 Conn. 171; Black v. Delaware & Raritan Canal Co., affirming Kean v. Johnson, 9 C. E. Green, 455; Goodin v. Cincinnati, etc., Canal Co., 18 Ohio St. 169; Rollings v. Clay, 33 Me. 139; Railway Co. v. Allerton, 18 Wall. 233; Eidman et al. v. Bowman, 58 Ill. 444; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543; Imperial Bank of China v. Bank of Hindustan, Law Rep. 6 Eq., 91, 100; Clinch v. Financial Corporation, Law Rep., 5 Eq. 450, 464; s. c., on appeal, Law Rep. 4 Ch. 117, 120; Alabaster's Case, In re Commercial Bank, Law Rep. 7 Eq. 273; Treadwell v. Salisbury, etc., Co., 7 Gray, 393; Hodges v. N. E. Screw Co., 1 R. I. 347; 3 Kent, 12th ed., 67, and cases cited; Vernon v. Manhattan Co., 17 Wend. 526; s. c., 22 Wend. 183; Watkinson v. Bank of Pennsylvania, 4 Whart. 482; Pope v. Rieley, 23 Mo. 185; Pars. on Part. 419; Peabody v. Flint, 6 Allen, 52, 57; Spackman v. Evans, Law Rep. 3 H. L. 233, 234; s. c., Law Rep. 4 Ch. 117; Ex parte Morgan, 1 Mac. & G. 225; In re Magdalena Navigation Co., Johns. 690; In re Empire Assurance Corp., Dougans' Case, Law Rep., 8 Ch. 540; Pycroft v. Pycroft, 2 Sm. & G. 326; Scott v. Becher, 4 Price, 346; Palin v. Gathercole, 1 Coll. 565; McKay v. Chiles, 5 Mon. 259; Payne v. Wallace, 6 Mon. 381; Porter v. Scobie, 5 B. Mon. 387; Lampton v. Usher's Heirs, 7 B. Mon. 57; Fishback v. Williams, 3 Bibb, 342; Clarke v. Lyon Co., 7 Nev. 75; Bruner v. Wheaton, 46 Mo. 363; Joint Stock Discount Co. v. Brown, Law Rep. 3 Eq. 140; s. c., Law Rep. 8 Eq. 381; Hilles v. Parrish, 1 McCart. 380; Marsh v. Eastern R. R. Co., 40 N. H. 548;

43 N. H. 515 ; Ramsey *v.* Gould & Fisk, Law, *et al.*, 57 Barb. 399 ; Hea h *v.* Erie R. R. Co., 8 Blatchf. 347, and cases cited ; Brewer *v.* Boston Theater Co., 104 Mass. 378 ; 2 Joyce on Inj. 1274 ; Service *v.* Castaneda, 9 Jur. (o. s.) 367 ; Bramwell *v.* Halcomb, 3 Myl. & Cr. 740, 741 ; Mosely *v.* Mosely, 9 W. & R. 531 ; High on Inj., sec. 980 ; Ross *v.* Gordon, 2 Munf. 289 ; Hoffman *v.* Marshall, 1 J. J. Marsh. 64 ; Oelrichs *v.* Spain, 15 Wall. 231 ; Honey *v.* Rubber Tip Co., 12 Abb. Pr. 360 ; Bank of New Orleans *v.* Toledan, 20 La. An. 571 ; Dyke *v.* Dyer, 14 La. An. 701 ; Dunn *v.* Davis, 37 Ala. 95 ; Bullock *v.* Ferguson, 30 Ala. 227 ; McDaniel *v.* Crabtree, 21 Ark. 431 ; Sturgis *v.* Knapp, 33 Vt. 486 ; Wallis *v.* Dilley, 7 Md. 237 ; Hale *v.* Meegan, 39 Mo. 277 ; Uhrig *v.* St. Louis, 47 Mo. 528 ; Jenkins *v.* Parkhill, 25 Ind. 473 ; Wilson *v.* McEvoy, 25 Cal. 169 ; Prader *v.* Grimm, 28 Cal. 11 ; Allen *v.* Brown, 5 Lans. 511 ; Langworthy *v.* McKelvey, 25 Iowa, 48 ; Hill. on Inj. 99, secs. 53, 54 ; 11 Paige, 223 ; 1 Barb. Ch. 613 ; 54 Ill. 334 ; Collins *v.* Sinclair, 51 Ill. 328 ; Wag. Stat. 1030, secs. 11, 13, 14.

*Glover & Shepley*, for respondents, cited : Seargent *v.* Webster, 13 Metc. 497 ; Buel *v.* Buckingham, 16 Iowa, 284 ; Revere *v.* City of Boston, 15 Pick. 363 ; Binney's Case, 2 Bland, 142 ; Town, etc., *v.* Bank, etc., 2 Dougl. (Mich.) 530 ; Reynolds *v.* Comrs., etc., 5 Ohio St. 113 ; Barry *v.* Exchange, 1 Sandf. 280 ; Treadwell *v.* Salisbury, 7 Gray, 393 ; Stevens *v.* Hill, 29 Me. 133 ; Merrick *v.* The Bank, etc., 8 Gill, 59 ; Hodges *v.* The Screw Co., 1 R. I. 347 ; Durfee *v.* The Old Colony, etc., 5 Allen, 230 ; Gregory *v.* Patchet, 33 Beav. 595 ; Kent *v.* Jackson, 14 Beav. 384 ; Gray *v.* Chapin, 2 Russ. 126 ; Samuel *v.* Holliday, Woolw. 415 ; Graham *v.* Burkenhead, 2 Mac. & G. 158 ; High on Inj. 457, sec. 771 ; Hodgsson *v.* Powis, 1 DeG. M. & G. 12 ; Flooks *v.* London, etc., 1 Eng. Law & Eq. 12 ; Abb. on Corp. 780, sec. 108 ; Hodges *v.* New England, 3 R. I. 9 ; Toch *v.* Adams, 10 Cush. 252 ;

Floyt *v.* Thompson, 19 N. Y. 207 ; Woodbury *v.* The Proprietors, etc., 6 Vt. 528 ; Woolworth *v.* Farmers, etc.; 16 Wis. 629 ; McPherson *v.* Ohio & Mississippi R. R. Co., 35 Mo. 13 ; Galveston R. R. Co. *v.* Lowdry, 11 Wall. 459.

LEWIS, J., delivered the opinion of the court.

In February, 1873, a number of competing steamboat lines were engaged in the traffic to and from St. Louis on the Upper Mississippi River.   Among these was the Keokuk Packet Company, a corporation created by the State of Illinois, whose charter was to expire in April, 1873, with the privilege of continued existence, for purposes of liquidation only, two years longer.   Its officers, with those of four of the other lines, finding that the business, so divided, was not sufficiently remunerative to any, projected a plan for the formation of a new company, in which all should be interested, and which should run a single line of boats under the common control.

It was agreed that the steamboats and other property of each company should be valued by appraisers and turned over to the new corporation ; whereupon, stock in the latter to the amounts of such valuations should be issued to the old companies, respectively.   The new corporation, under the name of " The Keokuk Northern Line Packet Company," was organized February 26, 1873, in pursuance of the general law of Missouri, with a capital stock of $700,000, of which $175,000 was subscribed on behalf of the Keokuk Packet Company.   The steamboats belonging to this company were transferred to the new corporation at a valuation of $152,000, for which the former was credited with 1,520 shares of stock in the latter at $100 per share.   On May 14, 1874, the board of directors of the Keokuk Packet Company adopted a resolution in which it was recited that " whereas the Keokuk Packet Company has ceased to do any business, except to dispose of its assets and pay its debts ; and whereas the indebtedness of said company is large and at a heavy interest ; and whereas fifteen hundred and eighteen

shares of the stock of said company in the Keokuk Northern Line Packet Company can be sold for sixty thousand eight hundred dollars; and whereas it is deemed most advantageous to the creditors and stockholders of the Keokuk Packet Company to sell said stock and pay off its debts;'' therefore the president of said company was thereby authorized and requested to sell and transfer said shares of stock, upon the terms mentioned, to William F. Davidson, who is one of the defendants in this proceeding. The sale and transfer were consummated in accordance with the resolution.

On August 29, 1874, the plaintiff filed his petition in this suit, alleging that he was owner of one share of stock in the Keokuk Northern Line Packet Company; that the 1,518 shares sold to Davidson were issued to the Keokuk Packet Company without valid consideration; that the Keokuk Packet Company acquired no title to those shares, and transferred none to Davidson; that the whole transaction was a fraud, Davidson being a party thereto; and that suits were then pending, brought by certain stockholders of the Keokuk Packet Company in the United States Circuit Court and the Circuit Court of St. Louis County, to set aside the issue of said stock to the Keokuk Packet Company, to cancel the certificates thereof held by Davidson, and to recover back the property delivered by the Keokuk Packet Company to the Keokuk Northern Line Packet Company. It is further alleged that the issue of the stock and its subsequent transfer were for the purpose of giving Davidson control of the affairs of the Keokuk Northern Line Packet Company, by vesting in him a majority of the stock; that the defendants, other than the Keokuk Northern Line Packet Company, constitute the board of directors of that corporation, and the fraudulent scheme above set forth was the result of a combination and confederation of some of them with John S. McCune and defendant Davidson. It is further charged that Davidson has caused a meeting of stockholders

to be called, in violation of the charter and by-laws of the corporation, for the purpose of illegally declaring a dividend; that he is about to vote his said stock at such meeting, from which an irreparable loss will accrue to said corporation, whose financial condition will not admit of any dividend. Plaintiff prays for the cancellation of the 1,518 shares of stock; for an order restraining Davidson from exercising ownership of said stock, or from voting upon it at any time; for orders restraining the holding of the stockholders' meeting illegally called, and the declaring of any dividend contrary to law, and restraining the defendant directors from recognizing Davidson as owner of the 1,518 shares.

A temporary injunction was granted in accordance with the prayer of the petition, and an additional order was made forbidding the holding of any stockholders' meeting until the further order of the court.

The answers of defendants contain general denials of the charges of fraud, illegality, and want of consideration appearing in the petition; set forth the history of the formation of the Keokuk Northern Line Packet Company, with the causes which led thereto; allege the plaintiff's consent to that proceeding and his coöperation therein, as a stockholder of one of the old companies, and further allege the consent and coöperation of all the stockholders in the original corporation.

The plaintiff filed a reply, putting in issue the material allegations of new matter contained in the answers, averring that he, and all other stockholders of the constituent corporation whereof he was a member, consented to the consolidating arrangement referred to, but that he never assented to the introduction of the other companies mentioned, including the Keokuk Packet Company; that at the time of the consolidating organization he did not know, nor was he required to know, whether the subscriptions made by other companies, and particularly by the Keokuk Packet Company, were valid or otherwise; that he has since been in-

formed, and so charges, that all of said subscriptions were
without authority of law, and " were virtually made by Da-
vidson and his tools in his own interest;" that Davidson
has wrongfully appropriated most of the stock thus illegally
subscribed; that " before and since the commencement of
this suit he has been diligently engaged in fraudulent trans-
fers of his stock to his friends, so that they may claim as
innocent purchasers, although his title may fail." The re-
ply reiterates substantially, though in varied forms, the
charges contained in the petition, and alleges, further, that
the 1,518 shares were sold to Davidson for one-half their
value, and that " the defendants Davidson, Mullikin, and
Phillips purposely neglected to invite competition, and
made a clandestine sale for the purpose of defrauding the
stockholders of the Keokuk Packet Company."

Defendants filed a motion to dissolve the temporary in-
junction; whereupon there was a full hearing upon the merits
of the cause.

The court dissolved the injunction, and upon a final sub-
mission dismissed the bill, and assessed damages to the
amount of $2,600 against the plaintiff.

The testimony preserved by the record is too voluminous
to bear even a condensed recapitulation. Its chief features
will be considered in connection with the points raised by
appellant for a reversal.

It is argued for the plaintiff, as a consideration which
should control the entire treatment of the cause, that the
transfer of the property of the Keokuk Packet Company,
constituting the consideration for the 1,518 shares of stock
issued to that corporation by the Keokuk Northern Line
Packet Company, was absolutely void and inoperative, be-
cause the assent of some of the stockholders was never ob-
tained. The testimony shows that, while a majority of the
stockholders of the Keokuk Packet Company fully ratified
the consolidating arrangement, there were a considerable

minority who either were not consulted on the subject or withheld their consent.

It appears to be settled as a general rule that the officers of a corporation cannot, against the wishes of a single stockholder, convey away the entire property from which the corporation derives its emoluments, and which is essential to the business purposes of its organization. The right of the stockholder in this regard is founded upon contract. He has invested his means upon an agreement with his fellow-corporators that they shall be devoted to promotion of the general objects defined in the charter. He must yield to the will of the majority in whatever conforms to the tenor of this agreement, as being directed to the successful prosecution of the common enterprise. But, when asked to submit to a process which effectually annihilates the enterprise, and diverts his contribution into a channel never contemplated by him, the courts will protect him to the letter of his reserved rights. *Kean* v. *Johnson*, 9 N. J. Eq. 401; *Black* v. *Delaware & Raritan Canal Co.*, 24 N. J. Eq. 455; *Abbot* v. *American H. R. Co.*, 33 Barb. 578. Public policy, also, in cases of railroad and other corporations chartered for the public convenience, will sometimes interpose to prevent such a disposition of the corporate facilities as would defeat the purposes of the incorporation. *Central R. R. Co.* v. *Collins*, 40 Ga. 582. The rule, however, may be subjected to certain modifications in the application. *Cessante ratione, cessat lex.* The contract of the stockholder cannot imply that the business of the corporation must be persistently kept up, to the ruin of all concerned. The understanding and intent of the other contracting parties must also be considered. A mine worked by a joint-stock association may become wholly exhausted. A willful or obstinate stockholder could hardly prevail against the majority, who should determine upon a sale of the useless machinery for distribution of proceeds to cred-

itors and shareholders, rather than to throw away all their remaining capital in operating it, with no possibility of beneficial result. Such seems to be the interpretation of the rule as applied to private trading or manufacturing corporations, where the question relates only to the individual rights of stockholders. Referring to such corporations, in *Treadwell* v. *Salisbury Manufacturing Company*, 7 Gray, 404, Bigelow, J., said : " Neither the public nor the Legislature have any direct interest in their business or its management. These are committed solely to the stockholders, who have a pecuniary stake in the proper conduct of their affairs. By accepting a charter, they do not undertake to carry on the business for which they are incorporated indefinitely, and without regard to the condition of their corporate property. Public policy does not require them to go on at a loss." In the same opinion it is held that all such corporations have the right, " by a vote of the majority of their stockholders, to wind up their affairs and close their business, if, in the exercise of a sound discretion, they deem it expedient so to do." That the same interpretation will apply in cases of public corporations, such as railway and other transportation companies, when the question does not concern the demands of public policy, but only the contract rights of the individual stockholder, there cannot be a doubt. *Kean* v. *Johnson*, above cited, was a case of alienation by a majority of the stockholders of a public railway. The complainant, who was of the minority, asserted his contract right as a stockholder against the alienation. The court held that " a majority of the stockholders in a prosperous corporation cannot, at their own mere caprice, sell out the whole source of their emoluments and invest their capital in other enterprises where the minority desire a prosecution of the business in which they are engaged." But the fact that the business of the railway at the time of the transfer was " eminently prosperous " was declared to be " the very gist of the injury alleged to be done to the com-

plainant." "The contract is that *so long as the affairs of the company are prosperous* it shall go on, unless all consent to the contrary."

In the present case the testimony tended strongly, if not conclusively, to show that at the time of the transfer of property by the Keokuk Packet Company, with the consent of a majority of the stockholders, its business had for several years next preceding been prosecuted at an enormous pecuniary loss, and that from competition and other causes it was manifestly impossible to continue without financial ruin, unless through the medium of such a consolidation of competing lines as the transfer was to promote.

The law of public policy cannot oppose a discontinuance of corporate functions when these are on the very eve of extinction by command of the law itself. The transfers of property by the Keokuk Packet Company were made on March 5, 1873. The charter of the company was to expire April 15, 1873. It would be strange if any public interest could demand that the business of transportation should be carried on by that particular corporation for a period of five weeks and no longer; and that, therefore, a favorable opportunity for anticipating by so short a term the necessary process of liquidation must be rejected. The law of Illinois virtually commanded the corporation to cease its business operations on April 15, 1873. Surely there could be no substantial violation of that law in suspending them a few weeks earlier.

If it were really necessary to determine this cause by the test of the validity or invalidity in the transfer of its steamboat property by the Keokuk Packet Company, there might be little difficulty in reaching a fair conclusion from the suggestions thus advanced. It might reasonably be maintained that, neither by reason of any right of the minority stockholders, nor upon any ground of public policy, could that transfer or the subscription of stock in the new company be held invalid. But, as the case stands, there is no need for

a determination of those points. Suppose it were true that in these transactions violence was done to the rights of the non-assenting stockholders. They are not parties to this proceeding, and the plaintiff has no right to speak for them. He cannot champion their rights for purposes of his own. He was not a stockholder in the Keokuk Packet Company. The corporation of which he is a member has acquired a large stock of steamboat property, which is proper, if not essential, for the successful prosecution of its legitimate business. The consideration paid therefor has, as he says, proved of little value, comparatively, to the vendor, whose share-holders have suffered damage. But how does this give him any right of action? So far from having suffered injury, he would appear to have been materially benefited in his interest as a share-holder in the Keokuk Northern Line Packet Company. But he asks, nevertheless, that the transaction be annulled, because there was fraud in it. Fraud against whom? Not against himself nor the corporation whereof he is a member, but against third parties, who, so far at least as this suit is concerned, make no complaint, and are willing to abide by the results.

The plaintiff here urges, however, that suits have been instituted by the injured stockholders of the Keokuk Packet Company to set aside the transfer complained of, and to cancel the stock issued by way of consideration therefor. This being true, those suits present the very means by which all these questions may be properly settled. If successful, they will accomplish all that the plaintiff labors for in this. If unsuccessful, there will be a demonstration that he has no ground for a recovery here. Why, then, was this proceeding instituted at all? The pendency of those suits between the only parties who can properly litigate about the subject-matter would seem of itself to furnish a sufficient reason why this proceeding should not be entertained in any court. It seems to be apprehended by the plaintiff that defendant Davidson, by transfers of his stock to innocent purchasers

without notice, will place it beyond the reach of cancellation, even if the stockholders' suits should be successful; and that thus the Keokuk Northern Line Packet Company will be compelled to respond in dividends upon such stock, although deprived of the property in purchase whereof it was issued. There is no possibility of any such consequences. The pendency of a suit imparts notice to all the world of the claim or title in litigation. If Davidson should transfer to third parties any of the stock in controversy, its subsequent cancellation in the pending suits would reach it as effectually as if it had remained in his own hands. There appears in this connection not the least reason for any restraining order.

Plaintiff, in objecting that the Keokuk Packet Company could not properly embark in a new venture the means provided for its own enterprise, insists that the objection is strengthened by the fact that the corporation was about closing its affairs, and was soon to have no legal existence except for purposes of liquidation. But the transaction, taken altogether, looks less like embarking in a new venture than like preparing the way for a speedy withdrawal from business and an appropriation of assets to the claims of creditors and stockholders. It does not appear that the market for steamboats was particularly active. It would have been difficult, doubtless, to divide the property in specie among all claimants. By converting it into shares in a new and promising enterprise, there might seem to be a better prospect for a fair division, either of the stock itself or of its proceeds after sale. The stock was afterwards sold. The resolution directing the sale recited a large indebtedness of the corporation. Surely, if the real purpose was liquidation, as enjoined by law, no more direct means could have been chosen than a conversion of the stock into money. But plaintiff contends that this sale was fraudulent, being for less than half the par value of the stock. There is some conflict in the testimony on this

point, but the weight of evidence is decidedly to the effect that the price paid was the market value of the stock. It is doubtful whether the transaction here complained of would be treated as a " consolidation " within the meaning of the Illinois statute shown in evidence, which prescribes a method for the union of two or more corporations in a common undertaking. Consolidation, as generally understood, means something more than the mere subscribing by one company for stock in another. It implies a blending of all assets under a common control; an assumption by the joint responsibility of all the liabilities of each; the creation of a new corporate body which displaces and destroys the individual existence of its predecessors. All these attributes were wanting in the transaction before us. The Keokuk Packet Company retained its corporate individuality for all the purposes allowed it by law, and still held, as the testimony shows, a large amount of real and personal estate not affected by its dealings with the Keokuk Northern Line Packet Company. We cannot perceive that the Illinois statute bears any relation to the arrangement under consideration. There is here a mere union of interests, within certain limits, but no consolidation of the corporations. *Farnum* v. *B. C. Corp.*, 1 Sumn. 62. Plaintiff claims that neither he nor the dissenting stockholders of the Keokuk Packet Company are estopped by their long acquiescence in the transfer of the property and the issuing of stock in the new corporation, because they were, until lately, ignorant of the alleged frauds and wrongs committed in those transactions. As for the plaintiff, he has not yet discovered, or at least has not shown, any fraud or wrong perpetrated against himself or his personal interests of any sort. The claims of the stockholders referred to in this regard will doubtless be fully protected by any court of justice, in any proceeding adapted to that end, wherein they may appear as proper parties.

Complaint is made of the Circuit Court's exclusion of

testimony offered by the plaintiff to show the improper motives influencing the actors in various stages of the proceedings objected to. Counsel appear to lose sight of the important truth that in law a fraudulent purpose is harmless, if the act itself be lawful and unattended by any wrongful effect. It may be true that McCune and Davidson intended or desired to perpetuate the Keokuk Packet Company contrary to the terms of its lease of life, in active participation with other stockholders in the profits and emoluments of the new enterprise. But, inasmuch as the acts performed were directly adapted to liquidation and dissolution instead, and it nowhere appears that they were perverted to a different outcome, we cannot perceive what relevancy there might be in the interior workings of the minds which first conceived them. It may be true that Davidson, in all he did, was prompted by an ambition to attain a controlling position in the management of the new corporation, sustained by his ownership of a large amount of stock. But it is not shown that even absolute control in his hands would be necessarily detrimental; nor that such a controlling position is forbidden either by law or morals to any person or persons who can acquire a sufficiency of stock to command it.

The plaintiff has, in our view, wholly failed to make out a case for equitable interposition. The temporary injunction was properly dissolved and the bill properly dismissed.

We find no error in the assessment of damages in favor of defendant Davidson. The evidence is far from satisfactory to the effect, as plaintiff claims, that the stockholders' meeting was rightfully restrained. That defendant Davidson may have personally desired a declaration of dividend is the full extent of the injury threatened, if any were really possible in that direction. It does not appear that a sufficiency of votes were controlled or pledged or bound in any way to the gratification of his wishes.

The principle upon which counsel-fees are allowed upon dissolution of an injunction does not rest upon a supposed

increase of trial expenses created by the injunction. It is based upon the fact that defendant has been compelled to employ aid in getting rid of an unjust restriction forced upon him by the act of the plaintiff. If there had been no temporary injunction, there would have been no restriction upon the defendants' enjoyment of their legal rights. As plaintiff suggests, the expenses of a trial might have been just the same. But the defendants could have gone on, from beginning to end, and even after, without deprivation or interruption of any privilege. The policy of allowing counsel-fees in cases like the present is fully recognized by this court, without regard to whether the merits of the cause were ascertained on the motion to dissolve or otherwise.

As to the assessment in favor of defendants Mullikin and Phillips the record is somewhat confused. They were not named in the injunction-bond, so that, whatever claim they may have had against Buford, they have none against the sureties. Some days afterwards, as the record shows, an attempt was made to set aside this judgment, but the entry contains merely a dismissal of the motion for assessment. There was error in these proceedings. The judgment for damages in favor of defendants Mullikin and Phillips is reversed. In every other particular the judgment of the Circuit Court is affirmed. Judge BAKEWELL concurs; Judge GANTT not sitting.