JOHN BYRNE *vs.* SCHUYLER ELECTRIC MANUFACTURING COMPANY ET AL.

First Judicial District, Hartford, October Term, 1894. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and PRENTICE, Js.

The charter of a corporation is in the nature of a contract between the corporation and each of its stockholders, and neither the directors nor a majority of the stockholders can bind a minority without the assent of the latter, in any matter not expressly or impliedly authorized by the charter.

A manufacturing company, being insolvent, transferred all its property to another corporation receiving in return certain shares of the capital stock of the latter company. This was done, not for the purpose of winding up its affairs and dividing the stock so received, or its avails, among its own stockholders, nor as a temporary device resorted to merely to carry the former corporation over a period of financial distress, but to keep the insolvent company in nominal existence and at the same time carry on its business through the agency of the other corporation, which was formed for that purpose. *Held* that in the absence of express authority, no such power could be implied from its charter, and that the transfer was therefore *ultra vires* and void as against a non-assenting stockholder.

The right of such non-assenting stockholder to equitable relief does not depend in any respect upon the profitableness or unprofitableness of the transaction. He has the legal right to insist that the corporation shall keep within the powers granted by its charter.

Laches is inexcusable delay in asserting a right. One who acts as soon as possible after learning of his right, or that his right has been invaded, cannot be charged with laches.

[Argued October 4th, 1894—decided January 8th, 1895.]

SUIT in equity praying for the cancellation of a certain

written agreement and for other equitable relief; brought to the Superior Court in Hartford County where the plaintiff demurred to the defendants' answer, which demurrer the court, *Fenn, J.,* overruled. Subsequently the case was heard by the *Hon. Elisha Carpenter*, State Referee, who reported the facts to the court. The plaintiff filed a remonstrance to the acceptance of the report, which the court, *Shumway, J.,* overruled, and rendered judgment for the defendants, and the plaintiff appealed. *Error, judgment set aside and case remanded.*

The case is sufficiently stated in the opinion.

*George D. Watrous*, with whom was *Frank Sullivan Smith* of New York, for the appellant (plaintiff).

I. Had the Schuyler Electric Manufacturing Company power to subscribe to the capital stock of the Schuyler Electric Company of Middletown?

Little more can be necessary than to state this question. The company's charter does not authorize any such subscription, nor does the general law of this State. In the absence of such authority the subscription is absolutely prohibited by law. The suggestion that what a corporation has not power to do may be done by trustees in its behalf, deriving authority from a corporate vote, is unworthy of discussion. *Central Railroad Co.* v. *Pennsylvania Railroad Co. et al.*, 31 N. J. Eq., 475; 23 Amer. & Eng. Ency., p. 798; 36 Amer. St. Rep., 134; *Marble Co.* v. *Harvey*, 92 Tenn., 115; *Denny Hotel Co.* v. *Schram*, 6 Washington, 134; *Mechanics Building Asso.* v. *Meriden Agency Co.*, 24 Conn., 159.

II. Has the Schuyler Electric Manufacturing Company power to dispose of all its assets otherwise than by a *bona fide* sale for cash, or its equivalent, and the distribution of the proceeds?

That special circumstances may exist, justifying a sale and the acceptance of property, even including stock in another corporation, in payment, has been admitted, but we find no case except where all of the stockholders have consented; or where the property received has an actual

prior existence and a value, and is capable of distribution. In case of the total abandonment of the business of a corporation, and the disposing of all its assets, there is only one way sanctioned by law whereby that can be effected with justice to all parties, and that is by a *bona fide* sale for cash or its equivalent.

Any stockholder may insist upon a sale of the property upon the winding up of the corporation. *Mason* v. *Pewabic Mining Co.*, 133 U. S., 50; *Sigourney* v. *Munn*, 7 Conn., 11; *Dickson* v. *Dickinson*, 29 id., 600; *People* v. *Bullard*, 134 N. Y., 269; *Easun* v. *Buckeye Br. Co.*, 51 Fed. Rep., 156; *B. M. & F. Co.* v. *Harvey*, 20 S. W. Rep., 427; *Gresham* v. *Island City Bank*, 21 id., 556; Morawetz on Corporations, §§ 208 and 131; *Bank* v. *Sachtleben*, 67 Tex., 425; Cook on Stock and Stockholders, §§ 629 and 630, 667, 668, and cases cited; *Kean* v. *Johnson*, 9 N. J. Eq., 401; *Hayden* v. *Official Co.*, 42 Fed. Rep., 875; *Ervin* v. *O. Ry. & Nav. Co.*, 27 id., 635. The contention of the plaintiff in this case is, and always has been, that in consequence of the divergence of views there is only one way to test the value of the assets of the Manufacturing Company, including its patents, and that is by a sale under order of court. To such a test he seems to be legally entitled by the decisions both of this State and of the Supreme Court of the United States.

III. Were the doings of the directors, without reasonable notice to the plaintiff, valid?

Of the all-important meeting of October 17th, the plaintiff had no notice except by telegram received on that day, too late to attend the meeting. Then, for the first time, he learned what was contemplated. There was no evidence of any such emergency as to require action without giving the plaintiff an opportunity to be present. Under such circumstances the doings of directors, in matters vital to the welfare of the corporation, are void. *Bank of Little Rock* v. *McCarthy*, 55 Ark., 473; *Stow* v. *Wyse*, 7 Conn., 214.

IV. The Schuyler Electric Co. of Middletown was not legally organized. Under our statutes the following conditions are essential: Those associating must be *persons;* they

must enter into a contract expressing their intention to form a corporation; all of the capital stock must be subscribed for by *bona fide* subscribers; at least twenty per cent thereof must be paid in cash. A corporation is not a *person* within the Joint Stock Act. *Insurance Co.* v. *New Harbor Co.*, 37 La. An., 233; *Central R. R. Co.* v. *Penn. R. R. Co et al.*, 31 N. J. Eq., 475; *Denny Hotel Co.* v. *Schram*, 6 Washington, 134.

V. A single stockholder has the right to enjoin *ultra vires* acts, or to set them aside if consummated. *Central R. R. Co.* v. *Penn. R. R. Co. et al.*, 31 N. J. Eq., 475; Cook on Stock and Stockholders, § 666.

There are, of course, cases where a stockholder by acquiescence may have cut himself off from this relief, and also cases where the act of directors though voidable by the corporation, may yet be ratified by a majority of the stockholders. In such cases, injunctions are not granted. But where the acts complained of are plain violations of law, and outside the limits of the contract of association, any stockholder may have his remedy. It could not be otherwise without upsetting the whole structure of corporation law.

*Charles E. Perkins* and *E. Henry Hyde, Jr.*, for the appellees (defendants).

I. Can a corporation which is insolvent and unable to carry on its business, with no resource but to go into insolvency and be wound up to the total destruction of all value of its stock, transfer its property to another corporation and receive payment therefor in its stock, without the consent of every one of its stockholders?

This question first arose, we believe, in 1850, in *Hodges* v. *Screw Co.*, 1 R. I., 347. There a corporation sold a rolling mill to another corporation and took stock in the latter in payment. The court, while intimating that the transaction was valid, decided the case on the ground that in the absence of fraud or other special ground a court of equity would not interfere. In 1856, the precise question arose in *Treadwell* v. *Salisbury Co.*, 7 Gray, 393. There, as here, a corporation

in difficulties sold all its property to a new one, and took payment in stock, which was distributed among its stockholders. The court said, p. 406: "Being done fairly and not collusively, as a mode of payment for the property of the corporation, that transaction is not open to valid objection by a minority of the stockholders." See also *Evans* v. *Boston Heating Co.*, 157 Mass., 37 ; *Easun* v. *Buckeye Brewery Co.*, 51 Fed. Rep., 156 ; *Buford* v. *Keokuk Co.*, 2 Mo. App., 169 ; *Ditch Co.* v. *Tellsbach*, 37 Cal., 543 ; *Lauman* v. *Lebanon R. R. Co.*, 30 Pa. St., 42 ; Cook on Stock and Stockholders, §§ 636, 668 ; Morawetz on Corporations, §§ 415, 417.

We do not know of any decisions which have held that a transaction like the one here was invalid. There are cases where it has been held that when a solvent corporation is carrying on business, a majority of the stockholders cannot sell it out to another corporation for stock in the latter, contrary to the wishes of the minority, thereby forcing them to become stockholders in a new corporation, without any reason or necessity therefor. *Pewabic* v. *Mason*, 133 U. S., 50 ; *People* v. *Ballard*, 134 N. Y., 269. We believe that there are no cases which go further than to hold that in the absence of special circumstances making it necessary, the majority of the stockholders in a corporation carrying on a successful business cannot exchange its assets for stock in another company against the objection of the minority. Even as to this the authorities differ, many holding that the majority of the stockholders of a trading corporation may sell out all its property if done in good faith and for a fair price, and can receive stock in payment as well as money.

It may be claimed by the plaintiff that a corporation cannot take stock in another corporation, but this is clearly not the law. There are cases where it can, and cases where it cannot, but this depends on circumstances, and there is no general rule to that effect. *Holmes & Griggs Co.* v. *Holmes & Wessell Co.*, 127 N. Y., 252. The question in all such cases is whether the taking the stock is incidental to, and necessary for, the better carrying on of its business. 1 Morawetz on Corporations, § 431 ; *Booth* v. *Robinson*, 55 Md.,

Byrne *v.* Schuyler Electric Mfg. Co. et al.

419 ; *Eggleston* v. *Doolittle*, 33 Conn., 396 ; *Smith* v. *Gaylord*, 47 id., 380.

The question has not arisen directly in this State.  In the case of *Savings Bank* v. *Meriden Agency Co.*, 24 Conn., 164, it was held that a corporation organized to do an insurance business could not subscribe for shares in a building association, because it had no connection with the business for which the former was organized.  In the case of *Terry* v. *Eagle Lock Co.*, 47 Conn., 141, the question was raised, but not decided.

II.  But whatever may be the abstract rule of law in this case, this court, as a court of equity, will not now interfere and set aside all these conveyances, and break up a well-established business of six years' standing, merely for the pleasure of Mr. Byrne, without any benefit to him, but with very great and irreparable injury to others.

Whatever the court might do by way of injunction to restrain the transfer of this property, if application had been made before it was consummated, it is very doubtful, to say the least, whether it is within its province, in the absence of fraud or other special ground, to interfere in the management of a mere trading corporation, and set aside conveyances merely because they may be *ultrà vires*.  *Hodges* v. *Screw Co.*, 1 R. I., 347.  It would be most inequitable in this court to exercise such a power in this case.  This conveyance and arrangement was made in perfect good faith, under the pressure of an overwhelming necessity, and as the sole means of preventing an entire loss of the stock both of the plaintiff and all the other stockholders.  The plaintiff took no steps to prevent the conveyance by appeal to the courts, but allowed the Middletown gentlemen to advance fifty thousand dollars in cash, and allowed the new corporation to assume and pay forty-five thousand dollars of the debts of the Manufacturing Company.  The new corporation has been in operation now for six years, and doubtless has incurred debts of its own and made contracts with others, who would be seriously affected by a decree.  It would now be impossible to place the parties in *statu quo*.

It is well settled that the doctrine of *ultra vires* will not be enforced, even in actions at law, where it would be unjust. *Rider Co.* v. *Roach*, 97 N. Y., 378, 381 ; *Whitney Co.* v. *Barlow*, 63 id., 62 ; *Atlantic Bank* v. *Savery*, 82 id., 291 ; *Palmer* v. *Mead*, 7 Conn., 149. It is also well settled that proceedings for the cancellation of conveyances are not matters of right, but merely of discretion. 1 Story's Eq. Jur., § 693.

The plaintiff, if he had any interests to be protected, has acted with most unreasonable delay. He had notice as early as September 29th, 1887, if not before, by the notice of the stockholders' meeting, that it was proposed to sell the assets of the company for stock. He knew it was in an insolvent condition, but refused to assist it in raising money, and withdrew his indorsement, leaving the other directors to shoulder the load. He took no action whatever by application to a court to prevent this transfer, but contented himself with filing objections at the directors' and stockholders' meetings, and allowed the conveyances to be made and the fifty thousand dollars cash to be paid, and the business to go on for seven months, till he brought this suit, April 9th, 1888, and then he allowed it to lie about six years before it was brought to a hearing. It is hardly necessary to refer to authorities to show that courts of equity in such cases require the most prompt application for protection of a party's rights, and especially would this be the case where the objections are merely technical and have nothing to do with the merits of the case.

ANDREWS, C. J. The Schuyler Electric Manufacturing Company is a corporation chartered by the legislature of this State, and is located at Hartford. The Schuyler Electric Company is a corporation formed under and pursuant to the joint stock Acts of the State, and is located at Middletown. For convenience we may call the first named company the Hartford corporation, and the other the Middletown corporation. The Hartford corporation was chartered " for the purpose of manufacturing, buying, selling, and dealing in all

kinds of machinery, appliances, and apparatus adapted to the purposes of producing and distributing light, heat, or power, by the use of electricity, and with power to manufacture and sell plants for furnishing electric light, heat, or power; and generally to manufacture such other articles incidental to its business as it may deem for its interest." Its capital stock was of two kinds: preferred stock to the amount of $350,000, and common stock amounting to $150,000. The common stock might be increased to an amount not exceeding $500,000, but only for the purpose of paying off and retiring a corresponding amount of the preferred stock; and no payment was to be made which should reduce the assets of the company below the sum of $150,000.

The articles of agreement of the Middletown corporation are not given, but it is stated that that corporation was formed to continue the same business which the Hartford corporation was chartered to carry on. By an agreement between these two corporations made on the 17th day of October, 1887, the Hartford corporation undertook to convey, and did in point of form convey, assign and transfer to the Middletown corporation "its entire assets including its letters patent, stock, bonds, choses in action, and property of every description," and received in pay therefor two thousand shares of the capital stock of the latter corporation of the nominal value of one hundred dollars each. These shares of stock were subscribed for and issued to certain persons who had been named as trustees for that purpose by the Hartford corporation, and who subscribed as such trustees and were so named in the issue of the same. The Middletown company accepted said transfer of property as full payment for the said shares of its stock. The property so transferred consisted of the various letters patent covering the system of electric manufacture and lighting according to which the Hartford corporation manufactured its electrical apparatus, and the machinery, tools and appliances with which it performed its work. It was the property without which it was and is impossible for that corporation to carry on its manufacture; and without which it is put entirely out of business

and out of all active existence; and the Schuyler Electric Manufacturing Company, instead of being engaged in the manufacture for which it was created, has become simply a *cestui que trust* of two thousand shares of the capital stock of another corporation. The case shows that the officers and managers of this corporation have made the sale and taken the stock as above mentioned, not with the intention of winding up its affairs and dividing the stock so received among their own stockholders, nor as a temporary arrangement resorted to merely to carry the corporation over a period of distress, but with the intention to hold it as a permanent investment. To sum it all up, the result is to practically dissolve the Schuyler Electric Manufacturing Company, and to transfer its business to the Schuyler Electric Company.

The plaintiff is the owner of two hundred and fifty shares of the common and ten shares of the preferred stock of the Hartford corporation. He has at all times objected to all the votes and acts of that corporation pursuant to which it transferred its assets and all its property to the Middletown corporation and became the owner of the stock of the latter company. He brought the present action to the Superior Court—after the corporation and the directors had refused to take any action to rescind the said contract—averring in his complaint that the said agreement of the Hartford corporation was a fraud upon him, was *ultra vires* and void, and asked the court so to declare, and to afford him some remedy either by an injunction or by the appointment of a receiver. Both said corporations were made defendants, and they both came into court and made answer. Their second defense sets forth the several votes of the Hartford corporation according to which the Middletown corporation was organized; alleges that the Hartford corporation was insolvent; that the Middletown corporation was organized for the purpose of continuing the business of the Hartford corporation; and that all the assets and property was transferred and the stock received in payment, as is hereinbefore stated. It then proceeds as follows: "If said plan for continuing

the business of the said Schuyler Manufacturing Company by the organization of the Schuyler Electric Company had not been carried out, the said Schuyler Electric Manufacturing Company would have been compelled to wind up its affairs, either under a receiver or in insolvency, and in either case the assets of said corporation, in the judgment of the directors, would have yielded not much, if anything, more than enough to pay creditors, and the preferred stock would have been of little value, and the common stock of no value whatever." And so the defendants aver that they did not act fraudulently towards the plaintiff, but in good faith, and for the best interests of the said corporation and all its stockholders.

The State Referee, to whom the case was committed, found the facts generally in accordance with the defendants' claims. The Superior Court accepted his report, found the facts to be as stated therein, and rendered judgment for the defendants to recover their costs. From that judgment the plaintiff appealed to this court.

Among the reasons of appeal are : " That the acts of the stockholders and directors of the Schuyler Electric Manufacturing Company in authorizing the subscription to the stock of said Schuyler Electric Company were constructively fraudulent, *ultra vires*, and void as against a non-assenting stockholder. That the transfer of the assets of the said Schuyler Electric Manufacturing Company, in the manner set forth, was likewise constructively fraudulent, *ultra vires*, and void."

These reasons of appeal present the two sides of the one transaction which is the subject of the plaintiff's complaint. Their full significance can only be appreciated when they are considered in connection with the purpose for which the property of the Hartford corporation was sold and the stock of the Middletown corporation taken in payment, as set forth in the second defense and found true by the referee. That purpose was to keep the Hartford corporation in nominal existence, and at the same time to carry on its business through the agency of the Middletown corporation, upon the

hope that the Hartford stock would become valuable by the successful operation of the Middletown company, and so in effect make the stockholders in the Hartford corporation stockholders in the Middletown one. A nominal corporation was to be maintained in Hartford, a real one in Middletown. And although the entire property and assets of the Hartford corporation was thus invested in a new business, and its stockholders are to gain or lose as that business is successful or otherwise, that new business is carried on under a different charter and under different rules, in forming which the stockholders of the Hartford company have no voice, and under the direction of officers unaccountable to them. The Hartford corporation is the beneficial owner of four fifths of the Middletown stock, but it can have no control over its business. It cannot have any direct control, for it is not the legal owner of that stock ; and there is nothing in the agreement between these corporations to show that it can have any control over the action of the trustees. A unanimous vote of the Hartford stockholders could not displace one of the trustees and appoint another in his stead. If one of them should die, a like unanimous vote could not name his successor. This is the scope of the reasons of appeal.

The plaintiff insists that this is an arrangement into which he cannot lawfully be taken against his will, and he says the Superior Court erred because its judgment forced him into this scheme when he had all along protested against it. Is, then, the plaintiff correct when he says there is error in the judgment of the Superior Court? That is, is the agreement which the Schuyler Electric Manufacturing Company undertook to make with the Schuyler Electric Company *ultra vires?*

An act is *ultra vires* of a corporation when it is not within the power of the corporation to perform it. The charter of any corporation is its enabling Act; the corporation is empowered to do those things only for which it is created, and to do them in the manner specified in the charter. This is especially the rule in the case of private trading or manufacturing corporations. "The charter is the full measure

of the powers which the corporation possesses. It cannot lawfully exercise any others. In ordinary cases every corporation is just what the incorporating Act has made it, and is capable of exercising its faculties only in the manner the Act authorizes." *Farrell* v. *Winchester Ave. R. R. Co.*, 61 Conn., 127; *Berlin* v. *New Britain*, 9 id., 180; *Bank of Augusta* v. *Earle*, 13 Peters, 587, TANEY, C. J. And as charters of this kind are usually granted at the request of the corporators, they are construed most strongly against the corporation. Nothing is granted except what is given expressly or by fair implication. And no other powers can be implied except such as are necessary and proper to carry into effect the powers expressly granted. 2 Kent's Comm. *298; *New York Firemen's Ins. Co.* v. *Ely*, 5 Conn., 560; *Mechanics &c. Ass.* v. *Meriden Agency Co.*, 24 id., 159; *Sumner* v. *Marcey*, 3 Woodb. & Minot, 112; *Franklin Co.* v. *Lewiston Sav. Bank*, 68 Me., 43; Endlich on Construction, § 354. Sutherland on Statutes, § 325.

It is not claimed that there is in the charter of the Hartford corporation any express authority to make such an agreement as it did make with the Middletown corporation. And if, upon the true construction of the charter of that corporation, it does not appear to have been the intention of the legislature, expressed or implied, that that corporation should have power to enter into such an agreement as the one now under consideration, then that agreement must be treated as illegal and wholly void. *Riche* v. *Ashbury Ry. Carriage Co.*, L. R., 9 Ex., 262. And as the rule of construction given in the cases we have cited is to be applied, then no such intention does appear. It is consistent, however, with these cases and the rule of construction they establish, that a corporation may carry on its business in the way in which such a business is usually carried on. It would not be questioned in the case of a trading corporation that it should trade. A manufacturing corporation is, on the contrary, ordinarily expected to retain its assets in its own business—not to sell and invest in the stock of another. The legislature fixes the amount of the capital of a manufacturing corporation because

it is expected that the corporation will employ it all in its own business. The Hartford corporation, or any other like corporation, might sell its assets in part or in whole if it was done in the usual course of business. It might take the stock of another corporation in payment if it was done in the carrying on of its own business. But the agreement made with the Middletown corporation was not of this kind. That agreement was not the carrying on of its business but the ending of its business. It put the Hartford corporation out of all business and out of active existence, and undertook to embark and continue its entire capital in the business of the Middletown company. Nor do the cases cited deny that a corporation, under some circumstances, might expend its whole capital in the purchase of the stock of another corporation; as if such purchase was made for the purpose of selling the stock, and *not permanently to hold it.* This is what was said to be lawful in *Hodges* v. *New England Screw Co.*, 1 R. I., 347. So, too, if such a purchase was made by a corporation in embarrassed circumstances, as the most advantageous way of closing its affairs, paying its debts and settling with its stockholders, it would be legitimate. This was what was done, and decided to be proper, in *Treadwell* v. *The Salisbury Mfg. Co.*, 7 Gray, 405. This case was referred to in *Evans* v. *Boston Heating Co.*, 157 Mass., 37, by the court with approval. It was held, however, that the sale in the latter case had received the implied sanction of the legislature.

*Easun* v. *The Buckeye Brewing Co.*, 51 Fed. Rep., 156, arose in Ohio. The defendant, a corporation organized under the laws of that State, had contracted to sell all its plant and assets to the plaintiff, and to take in payment the stock and bonds of another corporation to be organized to carry on the business. The corporation was solvent and doing a profitable business. The suit was brought to recover damages of the defendants for not fulfilling that contract. It was held that the contract was *ultra vires* under the laws of Ohio—that one corporation could not become the owner of the stock of another, unless authority to do so

was conferred by its charter; citing *Franklin Bank* v. *Commercial Bank*, 36 Ohio St., 350, and *Coppin* v. *Greenlees & Ransom Co.*, 38 id., 275. In discussing the case the court said : " An insolvent corporation, contemplating voluntary dissolution by consent of its stockholders, might have a right to dispose of its property, and accept, in whole or in part, for the purchase price thereof, stock in another corporation ; this stock either to be sold, and the proceeds thereof distributed to its creditors, or to be apportioned in kind to such creditors or stockholders as the terms of dissolution might provide." In the case of *Buford* v. *Keokuk Northern Packet Co.*, 3 Mo. App., 159, it was held that in ordinary cases the directors and the majority of the stockholders could not sell out the property of a corporation ; but that the officers of a corporation which was on the eve of dissolution by operation of law might, in the exercise of a sound discretion, transfer its assets to another corporation and take in payment the stock of such other corporation and convert it into money for the purpose of liquidation.

*The Miners' Ditch Co.* v. *Zellerbach*, 37 Cal., 543, was like this. The plaintiff was organized to dig and maintain ditches for the purpose of supplying water to the miners in Nevada county. It owned several ditches suitable and used for that purpose. The Eureka Lake Co. was another corporation organized for a like purpose, and was doing a business which was in competition with the business of the Miners Co. These two companies, by an agreement which was intended to be only temporary, united their stock and property. The defendant was a mortgagee and as such in possession of certain of the ditches of the plaintiff company. The suit was to recover the possession of the ditches, the complaint alleging that the agreement by which the two companies became united was *ultra vires* and void. It was held not to be so ; and whether it was so or not, the plaintiff could not against its own mortgage set up that the contract was illegal.

Other cases bearing on this subject are *People* v. *Ballard*, 134 N. Y., 269, 136 N. Y., 639 ; *Boston & Providence R. R.* v. *N. Y. & N. E. R. R.*, 13 R. I., 260 ; *Holmes & Griggs*

*Mfg. Co.* v. *Holmes & Wessell Metal Co.*, 127 N. Y., 252; *Pearson* v. *Concord R. R.*, 62 N. H., 537; *The Central R. R. of N. J.* v. *Penn. R. R.*, 31 N. J. Eq., 475; *Central R. R. Co.* v. *Collins*, 40 Georgia, 582; *Marble Co.* v. *Harvey*, 92 Tenn., 115, 23 Am. & Eng. Ency. of Law, 798; Cook on Stock and Stockholders (3d Ed.), §§ 64, 313; Morawetz on Corporations, § 433.

It may be stated as a general rule we think—subject possibly to some exceptions—that a corporation may not become a stockholder in another corporation for the purpose of holding the stock permanently, unless expressly authorized to do so. A solvent corporation may buy and sell the stock of another corporation, if done in the usual course of business, and may become the owner of such stock if taken in payment for debts; but an insolvent corporation may take the stock of another corporation only for the purpose of closing up its business, to be divided in kind, or to be converted into money and divided among its creditors and shareholders.

The defendants, though not admitting the correctness of the rule as just stated, place the stress of their defense on other grounds. They say that the directors of the corporation and all the stockholders, except the plaintiff, consented to the agreement before it was entered into, and ratified the action taken pursuant to it after the action was had; and that the plaintiff is bound by such consent and ratification; that the plaintiff does not show that he is injured, or that he would be benefited if the agreement should be declared to be void; that in fact the action taken is advantageous to the plaintiff, and its defeat would be to the injury of all the other stockholders. And they also say that the plaintiff by his own laches is debarred of all right to have the agreement disturbed. These considerations are urged with great force and ability, and are entitled to careful examination.

It is true that *ultra vires* is a doctrine which has not at all times received from the courts a perfectly consistent application. An act done or a contract entered into by a corporation may be alleged to be *ultra vires* of the corporation.

The objection may come from the State, from a dissenting stockholder, or from the party with whom the contract is made. And the courts often give a different meaning to the term according to the source whence the objection comes. An act or a contract may be *ultra vires* if the State objects, when it would not be so held if the objection came from a stockholder or from a contracting party. In this case we are dealing with this doctrine only as it may be invoked by a non-assenting stockholder. And this is to be determined by the obligation into which the stockholder has entered by becoming a member of the corporation.

A leading and perhaps the earliest case in which the reciprocal obligations of a corporation and its stockholders are discussed, is *Livingston* v. *Lynch*, 4 John. Ch., 573, decided in 1820, by CHANCELLOR KENT. He held that the charter of a corporation was a contract between the corporation and its stockholders, and that neither the directors nor a majority of the members could bind a minority without their assent in any matter not expressly or impliedly authorized by the charter. The case of *The H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 385, is to the same effect. These cases have been followed by very many others down to the present time. Morawetz on Corporations, § 1047; Cook on Stock and Stockholders, § 666; and the cases cited under each of these sections. *Natusch* v. *Irving*, 2 Cooper's Ch., 358, is an English case which held exactly to the same results. This case was decided by LORD ELDON in 1824. Other English cases are *Simpson* v. *Westminster Palace Hotel Co.*, 8 H. L. Cases, 712; *Pickering* v. *Stephenson*, L. R., 14 Eq., 322; *Lyde* v. *Eastern Bengal Ry. Co.*, 36 Beav., 16.

It seems to be the settled law of America and England, that any act, or proposed act of a corporation, or of the directors, or of a majority of the stockholders, which is not within the express or implied power of the charter of incorporation—in other words any *ultra vires* act—is a breach of the contract between the corporation and each of the stockholders; and that consequently any one or more of the stockholders may object thereto, and compel the corporation

to observe the terms of the contract set forth in the charter. Therefore it results that neither the directors nor a majority of the stockholders can sell the corporate property against the dissent of any stockholder. This is entirely clear in the case of a solvent corporation. *Abbot* v. *American Hard Rubber Co.*, 33 Barb., 578; *March* v. *Railroad*, 43 N. H., 523; *Lauman* v. *Lebanon Valley R. R.*, 30 Pa. St., 42; Morawetz on Corporations, §§ 274, 512, 513. And although the corporation is actually insolvent, if the purpose of the sale is not the *bona fide* winding up of its business, but is the continuance of the business in another corporation, the rule is not changed. A dissenting stockholder may interfere and prevent the sale. *Kean* v. *Johnson*, 9 N. J. Eq., 401; *Boston & Providence R. R.* v. *N. Y. & N. E. R. R. Co.*, 13 R. I., 260. The reasons are well stated by CHIEF JUSTICE LOWRIE in *Lauman* v. *Lebanon Valley R. R.*, *supra*. In that case the defendant company had undertaken to consolidate with another railroad company, to transfer all its property to, and take in payment the stock of, the other corporation. The plaintiff was a dissenting stockholder. JUDGE LOWRIE said: "A majority of the members of a corporation cannot be authorized to divest the interest of a dissenting stockholder, by a transfer of the whole of its property to another company, * * * without first giving security for the interest of such dissenting stockholder. * * * The contract of consolidation is an act of dissolution in form and substance * * * and the corporation cannot in the act of dissolution, dispose of the rights of its members. The act of dissolution, like the act of association, is not a corporate act, but an act of the members of the corporation. They may commit to their officers the business of effecting it in its details, but they are not required to do so by the terms of their association, and in effecting such a purpose the officers would be rather trustees of the members than corporate functionaries. Then it follows, quite obviously, that no corporate act can settle the terms of the dissolution, or distribute the effects among the members, and that this company cannot decide what the plaintiff shall take for his interest." To the same effect are *Black* v.

*Delaware &c. Co.*, 22 N. J. Eq., 415; *Mason* v. *Pewabic Mining Co.*, 133 U. S., 50; *Beman* v. *Rufford*, 1 Sim. N. S., 564.

The State Referee finds that "the plaintiff failed to show that he was in any way injured by the transactions of which he complains, nor does it appear that he will be in any way benefited if the relief that he seeks is granted him." It does not seem to this court that the question of the profitableness or the unprofitableness of the transaction affects at all the plaintiff's right. In the case of *Beman* v. *Rufford*, last cited, the vice chancellor, BARON CRANWORTH, said: "The bill, however, is filed by the shareholders of the *Oxford &c. R. R. Co.*, and the principle on which they are entitled to file it on behalf of themselves and all the other shareholders, is that this court will not allow any of them to say that they are not interested in preventing the law of their company from being violated. It will not allow any of them to speculate as to whether it would be more advantageous to do something which the Act of Parliament does not authorize to be done; and therefore it is that a very small number or, indeed, one of the shareholders may file a bill on behalf of the whole body, although, at a meeting of the company, a large majority of the other shareholders may have sanctioned that course of proceeding which the bill complains of. The shareholders so filing this bill, say that the company, together with the directors of it, have entered into a contract, * * * different from that which was contemplated by the Act of Parliament, and so to apply funds, which the plaintiffs say are their funds, in a mode in which they were never authorized to be applied; and, therefore, the plaintiffs seek to restrain them." That case was brought by the plaintiffs—three shareholders of the *Oxford &c. R. R. Co.* against that company, its directors, etc.—to prevent a certain agreement made with another railroad company, from being carried into effect. And an injunction was granted.

In the case of the *Central R. R.* v. *Collins*, 40 Ga., 582, the court in rendering judgment said: "We do not think the profitableness of this contract, to the stockholders of the

*Central, ete., R. R. Co.,* * * * has anything to do with the matter. These stockholders have a *right*, at their pleasure, to stand on their contract. If the charters do not give to these companies the *right* to go into this new enterprise, any one stockholder has the right to object. He is not to be forced into an enterprise not included in the charter.

" That it will be to his interest is no excuse ; that is for him to judge. By becoming a stockholder he has contracted that a majority of the stockholders shall manage the affairs of the company within its proper sphere as a corporation, but no further ; and any attempt to use the funds, or pledge the credit of the company not within the legitimate scope of the charter, is a violation of the contract which the stock-holders have made with each other, and of the *rights*—the *contract* rights—of any stockholder who chooses to say ' I am not willing.' It may be that it will be to his advantage, but he may not think so, and he has a legal right to insist upon it that the company shall keep within the powers granted to it by the charter." *Stevens* v. *The Rutland &c. R. R. Co.*, 29 Vt., 545 ; *Hoole* v. *Great Western Ry. Co.*, L. R. 3 Ch. App., 262.

The claim that the plaintiff is chargeable with laches we think is fully disposed of by the finding. The meeting of the directors of the Hartford corporation, at which the agreement to transfer all the assets to the Middletown corporation was made, was held on the 17th day of October, 1887. By some oversight notice of this meeting was not sent to the plaintiff. The omission was discovered, and a notice was sent by telegram to New York directed to the plaintiff's place of business, which he received on the 17th, but too late to attend the meeting. He telegraphed in reply protesting against the meeting and denying the right of the directors to hold the meeting. The finding then proceeds : " Immediately upon learning that a sale of the assets of the Schuyler Electric Manufacturing Company had taken place, the plaintiff served upon said company and upon its directors a notice, requesting that suit be instituted by said corporation for the purpose of setting aside said contract,

agreement, and sale, and for other purposes set forth in said notice. Said directors refused to cause the institution of said proceedings, and on the 7th day of March, 1888, the plaintiff caused to be presented to the stockholders of said company, at their annual meeting, holden on said day (and at which meeting the stockholders ratified the said agreement), a written notice and demand that a suit be brought to set aside said contract. Said stockholders neglected and refused to take the action requested by said notice, and thereupon, as soon as possible, the plaintiff instituted the present suit. I find that the failure to give seasonable notice to the plaintiff was not intentional, but accidental."

Laches is defined as " inexcusable delay in asserting a right." One who acts as soon as possible after learning of his right, or that his right has been invaded, cannot be charged with delay.

We think there is error in the judgment of the Superior Court and it is set aside. The case is remanded to be proceeded with according to law.

In this opinion the other judges concurred, except PRENTICE, J., who dissented.